## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 1 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| K.B., a minor,<br>By his parent and next friend,<br>SHERINA DAVIS<br>9 Temple Ct., NW<br>Washington, D.C. 20001<br><br>and<br><br>K.B.<br>9 Temple Ct., NW<br>Washington, D.C. 20001<br><br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation,<br>One Judiciary Square<br>441 4th St., N.W.<br>Washington, D.C. 20001,<br><br>and<br><br>CLIFFORD JANEY,<br>Superintendent,<br>District of Columbia Public Schools<br>825 North Capitol St., N.E.<br>Washington, D.C. 20002<br>(In his official capacity)<br><br>Defendants. | Case: 1:07-cv-00877<br>Assigned To : Roberts, Richard W.<br>Assign. Date : 05/10/2007<br>Description: CIVIL RIGHTS-NON. EMPLOY. |

## MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rules 65(a) and (d) of the Federal Rules of Civil Procedure, Plaintiff

Sherina Davis respectfully requests that this Court issue a preliminary injunction

**RECEIVED**

MAY - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

3

compelling Defendants to immediately place and fund K.B. at The Children's Guild with all necessary special education and related services. The grounds for this motion are set forth in the accompanying memorandum of points and authorities and exhibits.

WHEREFORE, plaintiff respectfully requests that this motion be granted.

Respectfully submitted,

Yael Zakai
D.C. Bar No. 483289
*Pro Bono* Counsel for Ms. Davis
The Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 x513
Fax: 202-467-4949
yzakai@childrenslawcenter.org

Laura N. Rinaldi
D.C. Bar No. 480096
*Pro Bono* Counsel for Ms. Davis
The Children's Law Center
616 H St., NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 518
Fax: 202-467-4949
lrinaldi@childrenslawcenter.org

2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| K.B., a minor,<br>By his parent and next friend,<br>SHERINA DAVIS<br>9 Temple Ct., NW<br>Washington, D.C. 20001<br><br>and<br><br>K.B.<br>9 Temple Ct., NW<br>Washington, D.C. 20001<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation,<br>One Judiciary Square<br>441 4th St., N.W.<br>Washington, D.C. 20001,<br><br>and<br><br>CLIFFORD JANEY,<br>Superintendent,<br>District of Columbia Public Schools<br>825 North Capitol St., N.E.<br>Washington, D.C. 20002<br>(In his official capacity)<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Immediate injunctive relief is necessary in this case to prevent irreparable injury

to a disabled child and to ensure that his right to a free and appropriate public education

("FAPE") is honored. The Individuals with Disabilities Education Act ("IDEIA") establishes this right to a FAPE and seeks to ensure that the rights of disabled children and their parents are protected. 20 U.S.C. § 1400 *et seq*. (2007). The District of Columbia Public Schools ("DCPS") violated and continues to violate K.B.'s rights by not providing him with a FAPE. Alarmingly, DCPS is failing to provide K.B. with an appropriate school placement with the supervision, support and structure necessary to maintain K.B.'s safety, given his special needs.

DCPS must be ordered to comply with federal and local law and provide K.B. with a FAPE. Ms. Davis requests that this Court find that DCPS is denying K.B. a FAPE and therefore must provide him with the education to which he is entitled. Specifically, Ms. Davis requests that this Court order Defendants to immediately place and fund K.B. at The Children's Guild with all necessary special education and related services. As presented below, the standards for the issuance of a preliminary injunction are met in this case.

## I. Factual Background

K.B., who has been a resident of the District of Columbia his entire life, is a six year old boy with a serious emotional disturbance. *See* Exhibit P-1. He has been identified as an emotionally disturbed child for special education purposes. *See* Exhibit P-2. K.B. is currently not able to attend school because DCPS is not affording him an appropriate school placement that can provide him with the special education supports and services he requires to be safe and to benefit from his education. Specifically, because DCPS is neglecting completely to implement K.B.'s Individualized Educational Program ("IEP") and neglecting to provide K.B. with adequate supervision, any of the

4

special education supports and services he requires, and an appropriate school placement,

DCPS is failing to maintain K.B.'s safety and is failing to afford K.B. the opportunity to

make educational progress as required by the law. As such, K.B.'s mother, Ms. Davis, is

left with no choice but to keep K.B. at home until K.B. is provided with a FAPE, which

includes a school where he is safe and free of harm. *See* Exhibit P-1.

K.B. is currently a first grade student at Walker Jones Educational Center

("Walker Jones EC"), where he first began attending as a Head Start student in the 2004-

2005 school year. *See* Exhibit P-1. As a Head Start student, K.B. struggled mightily

with his academic achievement, and K.B.'s teacher expressed her concerns about K.B.'s

difficulties to Ms. Davis. Nonetheless, DCPS failed in any way to take action in response

to K.B.'s academic difficulties. *See* Exhibit P-1.

K.B.'s educational deficits and need for special education assistance became even

more apparent during the 2005-2006 school year, when K.B. was a kindergarten student.

That school year, K.B. required constant supervision with his classwork. *See id.* He

would not listen to directions, was aggressive with others, got into fights with other

children, and would not calm down when teachers attempted to re-direct him. Because

K.B.'s kindergarten teacher was often unable to calm K.B. down in the classroom and

keep him on task, K.B.'s teacher would regularly send him to other classrooms and to the

office. DCPS failed again to respond in any way to address K.B.'s unmet academic and

behavioral needs. *See id.*

During the current school year, 2006-2007, as a first grade student, K.B.'s

academic and behavioral struggles have intensified even further. To date, DCPS has not

provided K.B. with any of the appropriate special education and related services that he

requires, and K.B. has therefore been unable to make academic progress. Moreover, K.B's safety and welfare have been repeatedly placed in jeopardy at Walker Jones EC.

First, K.B. frequently wanders out of his classroom and attempts to wander off of school grounds. Walker Jones EC is aware of this problem, but fails to effectively address it. *See* Exhibits P-3; P-4[1]; P-5. Alarmingly, on or about November 1, 2006, K.B. was found by a neighbor in the middle of the school day off of school property at a neighborhood playground, along with another young child, without any adult supervision. *See* Exhibit P-1. The school permitted K.B. to wander off of school grounds without any knowledge of K.B.'s whereabouts at the time, and clearly failed to provide supervision for this small child with serious social-emotional impairments. Walker Jones EC is located near a major intersection with a constant flow of heavy traffic, with entrance and exit ramps to a major highway. *See id.* Disastrous consequences could have resulted from K.B.'s wandering off of school property unattended as a result of DCPS' failures. In addition to this one disturbing incident where K.B. was found off of school grounds, it is unknown how many other times K.B. has actually been unsupervised during the school day, given that Walker Jones EC officials admit that he regularly wanders out of class and attempts to wander out of school. *See* Exhibits P-3; P-4; P-5.

Second, K.B. has returned home over the course of this school year with a variety of injuries, including a gash on his head and a wound from being stabbed with a pencil, without any explanation from his school. *See* Exhibit P-1. Third, K.B. engages in self-injurious behavior at the school, such as hitting his head on the chair, which could cause him serious injury. *See* Exhibit P-3. Fourth, as observed by school officials, K.B. has stated at school that he hates himself and that he was going to kill himself. *See* Exhibit P-

---

[1] Exhibit P-4 is redacted to remove information regarding children other than K.B.

6

4. Fifth, K.B. throws furniture in his classroom, and even destroyed his classroom by throwing objects around the classroom on one occasion. *See* Exhibits P-3; P-4; P-5; P-6; P-7; P-8. Walker Jones EC is clearly unable to provide K.B. with the specialized supervision, support and structure required to ensure his safety and the safety of the other students.

Due to K.B.'s emotional and behavioral problems, K.B. is struggling tremendously with his academics and is not achieving on grade level. *See* Exhibit P-3. In part due to DCPS' failures to address K.B.'s impaired social-emotional functioning, K.B. is both physically unavailable for learning because he is frequently not in his classroom and emotionally unavailable for learning when he is in the classroom. First, K.B. is often physically unavailable to access his education, given that K.B. was suspended several times this school year, K.B. is frequently removed from class by the security guard and taken to the office, and K.B. regularly wanders out of class and even out of the school building. *See* Exhibits P-1; P-3; P-5; P-9; P-10. Second, even when K.B. is in class, he is emotionally unavailable for learning, as he is hyperactive, impulsive, disruptive and experiences great difficulty calming down after his frequent altercations with other students. *See* Exhibits P-3; P-5; P-11; P-12.

Moreover, DCPS is simply failing to address K.B.'s continuing academic deficits and as such, he is not making any academic progress. *See* Exhibit P-3. K.B. has struggled for several years with writing, and now simply does not complete written work, many times refusing even to complete simple copying exercises that require him to write. *See* Exhibits P-2; P-3. Although K.B. is nearing the end of first grade, the age at which children should at least have developed basic reading skills, K.B. cannot and does not

7

read. *See* Exhibit P- 1; P-2. K.B. also performs below grade level in math. *See* Exhibit P-3. Learning is simply impossible for K.B. in the academic environment at Walker Jones EC.

Due in part to the serious concerns about K.B.'s safety, his continuing social-emotional struggles, and his poor academic achievement, in October 2006, Ms. Davis requested that special education evaluations be conducted for K.B. so that he could get the help he needed and begin making progress at school. *See* Exhibit P-1. In response to Ms. Davis' request, DCPS conducted only a psycho-educational evaluation for K.B. on November 20, 2006, and failed to evaluate K.B. in all areas of suspected disability as required. *See* Exhibit P-11. Specifically, despite concerns on the part of Ms. Davis and school officials in these areas, DCPS failed to timely conduct a full battery of achievement testing to determine whether K.B. suffers from a learning disability, assessments to determine whether K.B. suffers from an Attention Deficit Hyperactivity Disorder ("ADHD"), an occupational therapy evaluation, a hearing screening, and a speech/language evaluation. *See* Exhibits P-2; P-3; P-11; P-12; P-13; P-14; P-15.

A Multi-Disciplinary Team ("MDT")/IEP team convened on December 20, 2006[2] and determined that K.B. requires a full-time therapeutic special education placement. *See* Exhibit P-3. The MDT/IEP team agreed that Walker Jones EC was not a full-time therapeutic special education school, and that K.B. would therefore need a new school placement. *See* Exhibit P-1. However, because DCPS had not fully and timely evaluated K.B., an IEP could not be developed for him at that time. Therefore, due to DCPS' failure to timely and fully evaluate K.B., he had to remain at Walker Jones EC, an

---

[2] DCPS officials inaccurately dated the IEP with the incorrect date of December 13, 2006.

inappropriate school placement, without an IEP or any of the necessary special education supports and services he required.

On February 5, 2007 and March 2, 2007, DCPS conducted additional achievement assessments for K.B., as well as an assessment to determine whether K.B. suffers from ADHD.[3] *See* Exhibits P-16; P-17. Undersigned counsel requested on February 14, 2007 that an MDT/IEP meeting be scheduled to develop an IEP for K.B. *See* Exhibit P-18[4]. Due to K.B.'s academic and socio-emotional deterioration and his urgent need for a new school placement, undersigned counsel also requested on February 14, 2007 that an MDT/IEP placement meeting be convened on the same date to determine an appropriate placement for K.B. *See* Exhibit P-18. In response to these requests, DCPS sent undersigned counsel a Letter of Invitation for an MDT/IEP meeting for K.B., which indicated that one of the purposes of the meeting would be to discuss placement for K.B. *See* Exhibit P-19.

On March 5, 2007, an MDT/IEP meeting convened and an IEP was finally developed for K.B. *See* Exhibit P-2. The March 5, 2007 IEP for K.B. requires in part that he receive thirty and a half hours of specialized instruction weekly, two hours of counseling services weekly, and placement in a full-time therapeutic special education school with a low staff-student ratio. *See id.* It was agreed by the MDT/IEP team that K.B. required a new placement in part because Walker Jones EC cannot implement K.B.'s IEP. *See id.* Due to the serious concerns regarding K.B. remaining at Walker Jones EC, an inappropriate school, the MDT/IEP team agreed that K.B. urgently requires immediate placement at an appropriate school. *See id.* However, despite this urgency,

---

[3] However, DCPS failed again to conduct an occupational therapy evaluation, hearing screening, and speech/language evaluation for K.B.
[4] Exhibit P-18 is redacted to remove information regarding children other than K.B.

the requests of undersigned counsel to convene an MDT/IEP placement meeting and

DCPS' notice to Ms. Davis that placement would be discussed at this meeting, DCPS

refused to discuss or determine school placement at the March 5, 2007 MDT/IEP

meeting. *See* Exhibits P-1; P-19; P-20. Because of DCPS' refusal, at this meeting

undersigned counsel made a request to schedule an MDT/IEP placement meeting.

Walker Jones EC staff responded that they could not even schedule an MDT/IEP

placement meeting for K.B. until representatives from DCPS headquarters reviewed

K.B.'s documentation and determined his placement. *See id.* Undersigned counsel

requested again on March 20, 2007 that an MDT/IEP placement meeting be convened for

K.B., and still no MDT/IEP placement was scheduled. *See* Exhibit P-14. Undersigned

counsel was informed again by Walker Jones EC officials that representatives from

DCPS headquarters were still in the process of determining a placement for K.B. and

until they completed this process, no MDT/IEP placement meeting could be scheduled.

*See* Exhibit P- 15. To date, no MDT/IEP placement meeting has been scheduled or

convened for K.B., and he remains without an appropriate school placement.[5]

Because it is unsafe for K.B. to attend Walker Jones EC and it is clear that he

requires supports and services not available at Walker Jones EC in order to be safe, Ms.

Davis has had no choice but to keep K.B. at home as she waits for DCPS to provide K.B.

with a safe, appropriate school placement. *See* Exhibit P-1. In addition to requesting that

an MDT/IEP placement meeting be scheduled, Ms. Davis requested that work be sent

home or home instruction be provided for K.B. in the interim until DCPS provides K.B.

---

[5] No Prior Notice of Placement was issued at the March 5, 2007 MDT/IEP meeting or at any point thereafter for K.B.

10

with an appropriate school placement where he is not in danger. *See id.* DCPS sent one work packet home for K.B. [6]

Due to DCPS' unresponsiveness to K.B.'s special needs and its failures to provide K.B. with a FAPE, Ms. Davis filed a due process complaint with the DCPS State Education Agency Special Education Student Hearing Officer ("Student Hearing Office") on April 3, 2007.[7] *See* Exhibit P-21. The due process complaint requested placement for K.B. at The Children's Guild, an appropriate placement for K.B., as well as funding for any outstanding evaluations, and compensatory education services to compensate K.B. for the time during which he was denied a FAPE. *See id.* Because K.B. is languishing without any of the special education services he requires, on April 4, 2007, Ms. Davis filed a Motion for Expedited Hearing, requesting that a hearing be provided for K.B. within twenty days, with the issuance of a hearing officer's determination within ten days after the hearing, pursuant to DCPS' Special Education Student Hearing Office's Standard Operating Procedures.[8] *See* Exhibit P-22. DCPS did not respond in any way to Ms. Davis' Motion for Expedited Hearing. *See* Exhibit P-20. On April 12, 2007, a Hearing Officer denied Ms. Davis' Motion for Expedited Hearing.[9] *See* Exhibit P-23.

---

[6] Although Walker Jones E.C. has sent a work packet home for K.B. to complete, a work packet is not a substitute for an education, and certainly is not a substitute for the specialized instruction and structured therapeutic program to which K.B. is entitled as a child with special needs. Moreover, the provision of a work packet is not in compliance with K.B.'s IEP.

[7] The Due Process Complaint alleges that DCPS failed to provide K.B. with a FAPE. The particular issues included: (1) DCPS's failure to timely identify, locate, and/or evaluate K.B. as a child in need of special education; (2) DCPS's failure to timely and/or fully evaluate K.B.; (3) DCPS's failure to provide K.B.'s parent with notice of the procedural safeguards as required; (4) DCPS's failure to issue any prior written notices of the refusal to initiate the identification, evaluation, educational placement, and/or the provision of a free and appropriate public education for K.B.; (5) DCPS's failure to develop and/or timely develop appropriate IEP(s) for K.B.; (6) DCPS' failure to implement K.B.'s March 5, 2007 IEP and (7) DCPS's failure to timely provide and/or provide appropriate educational placement(s) for K.B.

[8] Under a regular hearing schedule, a hearing officer's determination must be issued within seventy-five days of the filing of a complaint. 20 U.S.C. § 1415(f)(I)(B)(ii); 34 C.F.R. § 300.515(a).

[9] The Hearing Officer erroneously denied the Motion for Expedited Hearing. The Hearing Officer denied the Motion because no facts were stated relating to the appeal of an interim alternative educational

In response to the due process complaint filed by Ms. Davis, the Student Hearing Office issued a Scheduling Memorandum to both parties on April 3, 2007. *See* Exhibit P-24. The Scheduling Memorandum required DCPS to provide a response to the complaint no later than April 13, 2007 and convene a resolution session no later than April 18, 2007, in conformity with the deadlines of the IDEIA. *See id.* DCPS failed to comply with any of the deadlines in this order, and failed in all of its responsibilities under the IDEIA in regards to required due process procedures. First, DCPS failed to respond to the due process complaint by April 13, 2007, as required by the IDEIA and the scheduling order. 20 U.S.C. § 1415 (c)(2)(B); *see also* Exhibit P-24. DCPS has failed completely to provide any response one full month after the filing of the due process complaint. *See* Exhibit P-20. Second, DCPS failed to hold a resolution session by April 18, 2007, as required by the IDEIA and the scheduling order. 20 U.S.C. § 1415(f)(1)(B); *see also* Exhibit P-24. DCPS has not contacted Ms. Davis or undersigned counsel to schedule a dispute resolution session in this matter. *See* Exhibits P-1; P-20. A full month after the filing of the due process complaint by Ms. Davis, no resolution session has been convened by DCPS. *See* Exhibit P-20. In addition, to date, no due process hearing has been scheduled for K.B. *See id.*

As requested in the due process complaint, Ms. Davis seeks placement for K.B. at The Children's Guild in Chillum, Maryland, an appropriate school for K.B. to which he has been accepted. *See* Exhibits P25; P-26. K.B. requires a placement that is able to address his emotional needs as well as his academic needs. *See* Exhibit P-27. The

---

placement. However, there was no sound basis for this legal reasoning because Ms. Davis' Motion for Expedited Hearing clearly outlined the reasons why she was not required to state facts related to the appeal of an interim alternative educational placement. Furthermore Ms. Davis' Motion included relevant facts and legal authority in support of granting the expedited hearing for K.B.

Children's Guild is a therapeutic full-time, special education school that caters to children with emotional, behavioral, and learning needs. *See* Exhibit P-26. The Children's Guild can implement K.B.'s IEP and provide him with all of the supports, services and accommodations he requires. *See id.*

The special education and support services outlined in K.B.'s IEP can be provided on campus by the staff at The Children's Guild. *See id.* The Children's Guild provides a low student-staff ratio, as required by K.B.'s IEP, with two certified special education teachers and a therapist assigned to a classroom of approximately ten students. *See* Exhibits P-2; P-26. K.B.'s IEP requires access to a therapist in a time of crisis to assist K.B. in regrouping. *See* Exhibit P-2. At The Children's Guild, K.B.'s therapist will have an office in his classroom, and will be available immediately whenever needed throughout the school day. *See* Exhibit P-26. K.B.'s therapist will also be an integral part of the teaching team and work closely with K.B. both in the classroom and in his individual and group therapy. *See id.* K.B.'s IEP also requires that he have the ability to remove himself from the classroom to regain composure if necessary. *See* Exhibit P-2. In addition to having access to a therapist's office within the classroom, the students at The Children's Guild have access to a multi-sensory de-escalation room outside of the classroom that provides a safe and supervised space in which students can regroup and regain composure if necessary. *See* Exhibit P-26. The Children's Guild is an appropriate school placement for K.B. that can provide him a FAPE, where he will for the first time ever have an opportunity to make educational progress. *See id.*

However, only two spots remain available at The Children's Guild, and other children are also currently seeking placement there. K.B. could lose his spot if he is not

13

placed at The Children's Guild immediately. *See id.* Furthermore, on April 23, 2007,

K.B. was seen by Dr. Nathaniel Beers at Children's National Medical Center's

Neurodevelopmental Pediatric Program, who noted in his report that "K.B. requires

*emergency* placement secondary to his emotional disturbances and the inability of the

school to provide a safe environment for his education." *See* Exhibit P-27 (emphasis

added). To date DCPS has failed not only to comply with the procedural requirements of

the IDEIA, but also to implement K.B.'s IEP and to provide him with an appropriate

placement. There is no doubt that K.B. immediately requires placement at The

Children's Guild.

## II. Parent is Entitled to Injunctive Relief Under the Traditional Four-Prong Test for Injunctive Relief

Ms. Davis and K.B. are entitled to injunctive relief to ensure that the provisions of

IDEIA are enforced to guarantee that K.B. can begin receiving the FAPE to which he is

entitled. The traditional standards for injunctive relief are set forth in

*Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925

(D.C. Cir. 1958). *See also Washington Metro. Area Transit Comm'n v. Holiday Tours,*

*Inc.,* 559 F.2d 841, 843 (D.C. Cir. 1977). In order to be granted injunctive relief, a

plaintiff must show that: (1) it is likely to prevail on the merits of the appeal; (2) without

the relief requested it will suffer irreparable injury; (3) the issuance of the injunction

would not substantially harm other interested parties; and (4) the public interest lies with

the granting of the injunction. This four-prong test is the standard applicable to a request

for injunctive relief under IDEA. *See Massey v. District of Columbia*, 400 F. Supp. 2d 66

(D.D.C. 2005). Ms. Davis can meet all four prongs of this test, and therefore is entitled

to injunctive relief.

14

**A. Ms. Davis Has Demonstrated a Likelihood of Success on the Merits.**

    **1.**     **There is a substantial likelihood that Ms. Davis will prevail on the merits of her claim that DCPS is denying K.B. a free and appropriate public education in violation of the IDEIA.**

Ms. Davis is substantially likely to prevail on the merits of her claim because DCPS is failing to provide K.B. the free and appropriate public education to which he is entitled under the IDEIA. 20 U.S.C. § 1412(a)(1)(A) ("A free appropriate public education is available to all children with disabilities residing in the [District of Columbia] between the ages of 3 and 21..."). A FAPE is defined in part as special education and related services that have been provided at public expense in conformity with a child's IEP. 20 U.S.C. § 1401(9). The Supreme Court has clarified that school districts provide a disabled child a FAPE by ensuring that he or she has access to specialized instruction and related services which are individually designed to confer some educational benefit upon the child. *Bd. Of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982). In order to receive educational benefit, K.B. requires, in part, specialized instruction and counseling services in a full-time therapeutic special education program. However, DCPS has utterly neglected its obligation to provide K.B. with a FAPE for more than two years.

Despite K.B.'s clear academic and behavioral needs, DCPS failed to take any action whatsoever to address K.B.'s needs during the 2004-2005 and 2005-2006 school years. The IDEIA requires that DCPS identify, locate, and evaluate all children in need of special education in the District of Columbia. 20 U.S.C. § 1412(a)(3)(A). Nonetheless, DCPS did not provide K.B. with evaluations for special education during those school years. Moreover, the IDEIA requires that DCPS provide written

documentation to a parent of its refusal to initiate the special education evaluation or referral process, and provide parents of children in need of special education with notice of their procedural safeguards, which includes a statement of a parent's rights. 20 U.S.C. § 1415(d); 20 U.S.C. § 1415(b)(3); § 1415(c). DCPS failed to provide Ms. Davis with any documentation of its refusals to initiate the special education evaluation or referral process for K.B. and failed to provide Ms. Davis with her procedural safeguards. Because DCPS did not provide her with the information that it was required to provide her with under the due process protections outlined in the IDEIA, Ms. Davis did not have the information she needed to ensure that her rights and K.B.'s rights were being protected. More importantly, K.B. was therefore deprived of a FAPE, as DCPS failed to provide K.B. with any special education services and K.B.'s intensive needs went unaddressed.

During this current school year, 2006-2007, DCPS continues to deny K.B. a FAPE. The IDEIA requires that an IEP be developed and in effect for all children with disabilities who qualify for special education. 20 U.S.C. § 1412(a)(4); 1414(d)(1)(A); § 1414(d)(2)(A). An IEP was developed for K.B. on March 5, 2007, but to date it remains completely unimplemented and K.B. goes without the specialized instruction, counseling services, accommodations, and supports he requires in order to make educational progress. Furthermore, K.B.'s IEP specifically requires that he be placed in a full-time therapeutic special education placement, but DCPS has provided no appropriate placement whatsoever for K.B. since the March 5, 2007 MDT/IEP meeting. DCPS is failing to provide K.B. an education that comports with his IEP, in part, because K.B. remains in a school placement that simply cannot implement his IEP. It is undisputed by

DCPS that Walker Jones EC is not a full-time therapeutic special education school, and that Walker Jones EC is therefore an inappropriate placement for K.B. For DCPS to allow K.B. to remain at Walker Jones EC is a clear violation of the law, resulting in a denial to K.B. of the individualized education to which he is entitled. DCPS is denying K.B. educational benefit because K.B. is simply unable to benefit from his education without an appropriate school placement. DCPS has been unresponsive to repeated requests by undersigned counsel to convene an MDT/IEP placement meeting for K.B. 20 U.S.C. § 1414(e). Moreover, DCPS has not proposed any school placement whatsoever for K.B. K.B.'s opportunity to make academic progress slips further away from him with each passing day that he goes without the FAPE he requires. There is no doubt that Ms. Davis will prevail on the merits because DCPS' complete failure to implement K.B.'s IEP and to provide him with an appropriate placement is a flagrant violation of the IDEIA.

Though Ms. Davis' likelihood of success on the merits is obvious and substantial, it is not necessary that she demonstrate "a mathematical probability" that she will succeed on the merits. *Cox v. Brown,* 498 F. Supp 823, 828 (D.D.C. 1980). Rather, in IDEIA cases, the Court "must weigh the irreparability of harm, and if it is substantial, the Court may, in its discretion, grant relief even though its view of the merits may markedly differ from that of the plaintiffs." *Id.* (citing *Washington Metropolitan Area Transit Commission,* 559 F.2d at 843-44). Although Ms. Davis will undoubtedly prevail on the merits, given that DCPS' failures have resulted in the complete non-implementation of K.B.'s IEP and the absolute denial of an appropriate school placement for K.B., the irreparable harm to K.B. is substantial and this prong would nonetheless be satisfied.

17

2.   **There is a substantial likelihood of success on the merits because the remedy sought by Ms. Davis is appropriate.**

Because DCPS failed to provide K.B. with any appropriate placement and The Children's Guild is an appropriate school placement for K.B., Ms. Davis is substantially likely to receive the remedy sought. Furthermore, no other remedy is appropriate in this case. If the school system does not provide a child with a FAPE, private placement is proper if the education provided by the private school placement is "reasonably calculated to enable the child to receive educational benefits." *Constance Wirta v. District of Columbia,* 859 F. Supp. 1, 5 (D.D.C. 1994), citing *Rowley,* 458 U.S. at 176. Ms. Davis seeks placement for her son at The Children's Guild in Chillum, Maryland, which has accepted K.B. As a full-time therapeutic special education school which serves children with emotional, behavioral, and learning problems, and which can provide K.B. with all of the supports, services, and accommodations he requires, The Children's Guild is an appropriate school placement for K.B.

In addition, DCPS cannot be given another opportunity to fail this child when DCPS has repeatedly denied K.B. the education that is his right. *Wirta,* 859 F. Supp. at 5 (D.D.C. 1994). (There is [N]o authority which permits a school system a second opportunity to conduct evaluations and propose an alternative placement where its failure to do so in the first instance violated the requirements of the Act."). DCPS failed to provide K.B. with a FAPE during his first two years as a student at Walker Jones EC, and now DCPS has missed many more opportunities over the course of this school year to provide K.B. with a FAPE. DCPS had the opportunity at two separate MDT/IEP meetings to provide K.B. with an appropriate placement, but it failed to do so. DCPS had multiple opportunities to convene an MDT/IEP placement meeting after receiving

18

repeated requests to convene a meeting to discuss and determine an appropriate placement for K.B., but it failed to do so. DCPS had the opportunity to respond to Ms. Davis' concerns as outlined in the due process complaint and convene a resolution session to resolve those concerns, but it failed to do so. Now that DCPS has so patently and repeatedly denied K.B. a FAPE, it should not have additional opportunities to propose a placement for K.B. after it failed to do so for so long, at the expense of K.B.'s safety, well-being, and education. It is clear that the Children's Guild can provide K.B. with a FAPE and that K.B. will have an opportunity for the first time in his life to make academic progress if placed there. Consequently, Ms. Davis is likely to prevail in seeking placement at The Children's Guild for K.B.

### B. Irreparable Harm Will Result Absent Injunctive Relief

#### 1. DCPS' denial of FAPE to K.B. will continue to cause K.B. irreparable harm.

K.B. will continue to suffer irreparable harm at the hands of DCPS if the injunctive relief requested herein is not granted. This Court previously determined that a school district's failure to place a student in an appropriate school, thereby resulting in a denial of FAPE, constitutes irreparable injury.

> It appears that absent injunctive relief, [the students] will suffer the irreparable harm of lacking each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling of their immediate needs. *Cox,* 498 F. Supp. at 829.

DCPS has failed to provide K.B. with an appropriate education since the time he first demonstrated educational deficits in the 2004-2005 school year. Depriving a child of even one day of an appropriate education is sufficient to find irreparable harm. *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003), citing *Cox,* 498 F. Supp.

19

at 828.    Having gone two and a half years without an appropriate education, the harm to

K.B. has accumulated and he has spiraled to the point where he engages in self-injurious

behavior, he talks about ending his life, and he is achieving below grade level.    Due to

DCPS' repeated failures, K.B.'s deficits have only intensified and he now requires a full-

time therapeutic special education placement.    Despite K.B.'s obvious need for special

education services and a new placement, DCPS is failing to act and ignoring the many

needs of this very young and fragile child.    As a result, K.B. remains without any special

education services whatsoever.    Time is of the essence in providing K.B. with the

necessary services so that further irreversible harm will not result.    See *Blackman v.

District of Columbia,* 185 F.R.D. 4, 7 (D.D.C. 1999) ("[T]o a young, growing person,

time is critical.    While a few months in the life of an adult may be insignificant, at the

rate at which a child develops and changes, especially one at the onset of biological

adolescence with or without the special needs like those of our plaintiff, a few months

can make a world of difference in the life of that child.");    *see also Davis v. District of

Columbia,* 522 F. Supp. 1102, 1111 (D.D.C. 1981) ("A month lost in the life of a child is

forever lost, an 'eternity,' while which type of education she should have received passes

back and forth through examination and evaluation.").

In addition to suffering irreparable harm because DCPS is not implementing his

IEP and is not providing him with an appropriate school placement, K.B. is unable to

access his education without the structure, supervision, supports, and special education

services he requires.    As a result of DCPS' failures to address K.B.'s many special needs,

K.B. is not making academic progress.    With K.B.'s special needs in mind, the MDT/IEP

team that convened on December 20, 2006 agreed unequivocally that K.B. requires a full-

time therapeutic special education placement in order to receive an appropriate education and make academic progress. However, more than four months later, K.B. remains without an appropriate school placement, suffering each day he remains enrolled at Walker Jones EC. Given K.B.'s history of self-destructive and self-injurious behavior, the harm to K.B. without an appropriate placement is even greater. Despite the undisputed urgency of his need for a full-time structured, supportive therapeutic school placement, DCPS has turned a blind eye to K.B. and as such, K.B. is languishing without much-needed educational services.

Even more alarmingly, due to DCPS' failures to keep K.B. safe at his current school placement, Ms. Davis has had no choice but to keep K.B. at home while she awaits an appropriate school placement where K.B. is safe. As a result, K.B. is currently at home with no instruction other than a work packet. This Court has recognized that a child without disabilities would suffer harm from being unable to attend school, but that "such harm is heightened for a disabled child with much greater need for daily structure and consistency." *Massey*, 400 F. Supp. at 74. Without the opportunity to attend school, K.B. is clearly suffering irreparable harm by losing out on much needed specialized education with each passing day. The resulting irreversible harm to K.B. becomes more serious the longer K.B. remains without an appropriate educational placement, and is only compounded by the additional irreversible harm he endures each passing day he is forced to remain at home instead of attending school.

> 2.  **K.B. will continue to suffer irreparable harm because Ms. Davis is financially unable to place K.B. at The Children's Guild and seek reimbursement thereafter.**

21

Where a school district fails to provide a child with FAPE, the Supreme Court has provided parents with the right to receive reimbursement for placing their children in private school placements. *School Comm. of the Town of Burlington, Mass v. Dept. of Educ. of Mass.*, 471 U.S. 359, 369 (1985). Congress subsequently codified this right in the IDEIA. 20 U.S.C.A. §1412(a)(10)(c). If Ms. Davis had the means, she could have personally funded K.B. at The Children's Guild and sought reimbursement. Surely, in providing parents with this right, Congress did not intend to deny parents without adequate financial means a similar, immediate remedy when the circumstances demand it. Without the financial means, Ms. Davis has no choice but to seek immediate injunctive relief in order for her son to have an opportunity to attend school and benefit from his education.[10]   Because DCPS is causing irreparable harm to K.B. and Ms. Davis is unable to fund K.B. on her own and seek reimbursement later, the harm to K.B. will only continue to compound without immediate relief.

> 3.     **K.B. will continue to suffer irreparable harm because there is no assurance that DCPS will abide by the procedural requirements of the IDEIA.**

This Court has recognized that where a child has not been provided with a FAPE and there is no assurance that DCPS is able to follow the procedural timelines required by the IDEIA, the child will suffer irreparable harm if the injunction is not granted. *Massey,* 400 F. Supp. at 74. Here, because DCPS has not even made a cursory attempt to follow the procedural responsibilities and timelines required by the IDEIA, there is no telling how long K.B. will remain without a FAPE. DCPS has failed to follow the procedural

---

[10] Ms. Davis' inability to place K.B. at The Children's Guild and later seek reimbursement is especially concerning, given that there only two available spots remain at The Children's Guild for the 2006-2007 school year. The limited availability of space for K.B. at The Children's Guild is a result of DCPS' failure to timely respond to K.B.'s urgent need for a new school placement and provides further justification for the granting of a preliminary injunction to prevent further irreparable harm to K.B.

guidelines in regards to placement for K.B., failed to respond to Ms. Davis' due process complaint and her Motion for Expedited Hearing, and failed to convene a resolution session following the filing of her due process complaint. K.B. should not be forced to continue to suffer harm while uncertainty about his education persists due to DCPS' utter disregard for the procedural requirements of the law.

The IDEIA requires that DCPS ensure that a parent is a member of any group that makes decisions about the educational placement of his or her child. 20 U.S.C. §1414(e). Representatives from DCPS headquarters with no familiarity with K.B. are currently reviewing his documentation and will determine a placement for him. The placement process in which DCPS is partaking precludes Ms. Davis from being involved in the placement decision-making process for her son and therefore violates Ms. Davis' procedural rights as a parent of a disabled child.

When Ms. Davis pursued a due process hearing request against DCPS, the school district failed again in its procedural responsibilities. The IDEIA requires that DCPS respond to a due process hearing request in writing within ten days, to provide Ms. Davis with an explanation of why the school district refused to take the actions raised in the complaint, a description of other options that were considered and the reasons why those options were rejected, a description of the evaluation, procedure, assessment, record or report the school district used as the basis for the refused action, and a description of the factors that are relevant to the school district's refusal. 20 U.S.C.A. 1415(c)(2)(B)(i)(I). Here, not only did DCPS fail to provide Ms. Davis with a timely written response within ten days of receiving the due process hearing request, DCPS failed completely to provide Ms. Davis with any written response whatsoever. Moreover, when Ms. Davis filed a

Motion for Expedited Hearing, DCPS failed to respond to this Motion as well, once again failing to provide Ms. Davis with any notice of DCPS' position.

The IDEIA also requires that DCPS convene a resolution session within fifteen days of receiving notice of the parent's complaint to provide the parent with an opportunity to discuss the complaint and the school district an opportunity to resolve the complaint. 20 U.S.C. § 1415(f)(1)(B)(i). Here, not only did DCPS fail to timely convene a resolution session within the first fifteen days after the filing of the complaint, DCPS failed altogether to convene a resolution session. Due to DCPS' failures, Ms. Davis was therefore not provided with any early opportunity to resolve her complaints through the dispute resolution process. There are also no assurances that DCPS' administrative process will provide Ms. Davis with any resolution, as DCPS has not provided Ms. Davis with a hearing date and there is no guarantee that she will receive one, given DCPS' repeated procedural violations in this matter.

The IDEIA clarifies that procedural violations can amount to a finding of a denial of FAPE where the procedural inadequacies impeded the child's right to a FAPE, significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE, or caused a deprivation of educational benefits. 20 U.S.C. §1415(f)(3)(E)(ii). Here, all three results contemplated by the IDEIA occurred. DCPS' procedural violations have impeded K.B.'s right to FAPE and deprived him of any educational benefit. K.B. continues to go without the special education he requires as a result of DCPS' failure to provide Ms. Davis with an opportunity at an early resolution, which DCPS could have provided Ms. Davis through a response to her complaint and a resolution session. Moreover, Ms. Davis was impeded from the

24

decision-making process for K.B. because not only has DCPS refused to schedule a placement meeting in which she can participate, DCPS is engaging in a process that involves unilateral placement of K.B. without any participation from Ms. Davis in the decision-making process.

Regardless, Ms. Davis need not show that the procedural violations amounted to a denial of FAPE for K.B. because it is well-established that courts may order injunctive relief based on no more than the failure to comply with IDEIA procedural safeguards. See *Blackman,* 277 F. Supp. 2d (granting injunctive relief based on DCPS' failure to timely convene due process hearings). Here, DCPS has failed in many of its procedural obligations to Ms. Davis and her disabled son. Ms. Davis initially attempted to avail herself of the administrative process, but DCPS did not engage with Ms. Davis in this process as required by law, proving that there are no assurances that DCPS will live up to any further obligations under the IDEIA. DCPS has failed Ms. Davis and K.B. in both its substantive and procedural responsibilities under IDEIA, leading to irreparable injury to K.B. K.B. clearly is suffering tremendously as a student at Walker Jones E.C. without the therapeutic, behavioral, and academic supports he needs. Moreover, K.B. will continue to suffer with each passing day he goes without any education whatsoever, given that his mother has no safe and appropriate school placement to which she can send him at this time. A preliminary injunction is immediately required in order to prevent any further irreparable harm to K.B.

### C.    There is No harm to DCPS if K.B. is Placed and Funded at The Children's Guild.

DCPS will suffer no harm if the motion for injunctive relief is granted. DCPS is obligated under federal and local law to provide disabled children with a FAPE and it has

continually failed to do so in the present case. The law specifically allows for parents to

place their children in private schools when the school system has failed to provide a

FAPE to their child. 20 U.S.C.A. §1415(f)(1)(B); D.C. Mun. Regs. Tit. 5, § 3018.3

(2003). As discussed above in Section II(A)(2), if the school system does not provide a

child with a FAPE, private placement is proper if the education provided by the private

school placement is "reasonably calculated to enable the child to receive educational

benefits." *Wirta*, 859 F. Supp. at 5, *citing Rowley*, 458 U.S. at 176.    Moreover, the law

requires DCPS to place a child in a private school where DCPS cannot provide an

appropriate public school placement for the child.  D.C. Mun. Regs. Tit. 5 § 3012; 3013.

To order DCPS to comply with the law creates no harm.

        The only impact that the granting of this preliminary injunction could possibly

have upon DCPS is budgetary.  This Court has recognized that granting a preliminary

injunction that requires a school district to bear a financial expense in providing FAPE

does not amount to hardship for the school district because Congress has squarely placed

this obligation on the school district.

It is Congress however, which already determined that [the school district] must provide
an appropriate educational program for each of its pupils.  When [the school district]
is not to be in compliance with that congressional mandate, as suggested above, then an
individualized program, albeit involving expense, must be produced to fulfill not the
obvious compassionate necessities for these children but to uphold the congressional
intent of devising that which purports to satisfy equal protection. *Cox,* 498 F. Supp. at
830.

DCPS must fulfill its obligations and provide K.B. with a FAPE, regardless of any

financial expense it will incur.  It is well within DCPS' control to comply with the IDEIA

and obviate the need for courts to make determinations that will impact the school

district's budget. See *Massey,* 400 F. Supp. at 74.  The remedy of private placement is

appropriate and the financial cost to DCPS is minimal in comparison to the continued emotional, psychological, and academic harm K.B. will suffer if relief is denied.

### D. The Public Interest Will Be Served by Granting the Injunctive Relief Requested.

The public interest is best served by granting the injunctive relief requested. In accordance with IDEIA and local laws, the school system is required to provide children with disabilities a FAPE. Here, DCPS arrantly failed in its responsibilities. Granting the relief requested by Ms. Davis simply ensures that K.B. will finally get the special education and related services to which he is entitled under the law. Prior decisions by this Court have explicitly stated that the relevant public interest is that of students with special needs. "'The public interest lies in the proper enforcement of... the IDEA and in securing the due process rights of special education students and their parents provided by statute.' Furthermore, that public interest 'outweighs any asserted financial harm to DCPS.'" *Massey,* 400 F. Supp. at 75, quoting *Petties v. District of Columbia,* 238 F. Supp. 2d 88, 99 (D.D.C. 2002). The public interest is furthered when the government adheres to the law and provides its most vulnerable citizens with the rights established in statutory provisions. The public interest will be served if K.B. is placed and funded at The Children's Guild, where he can begin receiving educational benefit for the first time in his life.

### III. Placement of K.B. at The Children's Guild is the Appropriate Relief.

Judicial officers have the authority in IDEIA cases to issue any remedy necessary to ensure that a child receives the FAPE to which he or she is entitled. *See Harris v. District of Columbia,* 1992 U.S. Dist. LEXIS 11831, 13-14 (D.D.C. 1992). K.B. immediately requires the remedy requested, placement at The Children's Guild, in order

to ensure he receives a FAPE. DCPS' administrative process will not prevent the immediate irreparable harm suffered by K.B., and nothing short of a preliminary injunction will ensure that K.B. receives a FAPE. At this time, K.B. cannot attend school because his current school, Walker Jones EC, is inappropriate and cannot maintain his safety. The irreparable injury he is enduring is only compounding with each day he remains without an appropriate placement. K.B. cannot wait on the administrative process to address his urgent need for an appropriate school placement—time is critical.

This Court has ruled that "a well recognized exception to the exhaustion requirement, in an instance where irreparable harm may accrue, satisfies the failure to pursue administrative remedies." *Cox,* 498 F. Supp. at 829. The administrative remedy in this matter is the issuance of a hearing officer's determination following a due process hearing, which is not required until seventy-five days after the due process complaint is received. 20 U.S.C. §1415(f)(B)(ii); D.C. Mun. Regs. Tit. 5 § 3030.1(d). Thus, if K.B. is forced to pursue DCPS' administrative process, K.B. will face the denial of FAPE for forty-four additional days and possibly even more if DCPS continues to fail in its obligations under the IDEIA, and the irreparable harm to K.B. would only continue to accrue. At this time, a hearing date has not even been scheduled for Ms. Davis. Only a preliminary injunction ordering DCPS to place and fund K.B. at The Children's Guild ensures will ensure that K.B. receives a FAPE and immediately prevent K.B. from accruing additional injury.[11]

---

[11] When Ms. Davis filed for her complaint for a due process hearing, she sought placement for K.B. at The Children's Guild, funding for any outstanding evaluations for K.B. by a provider of Ms. Davis's choice, and compensatory education services for the period of time K.B. was denied a FAPE. Outside K.B.'s immediate need for an appropriate placement, Ms. Davis reserves the right to pursue administrative remedies for any outstanding evaluations and compensatory education services, if these issues still remain outstanding if and when KB is placed at The Children's Guild.

DCPS failed and continues to fail on a daily basis to provide K.B. with a FAPE. DCPS has completely failed to implement K.B.'s IEP for more than two months and to provide K.B. with an appropriate placement for more than four months. When a school system fails in its duty to provide a child with FAPE, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits." *Wirta,* 895 F. Supp. at 1. As outlined above in Section I, at The Children's Guild, K.B. will receive full-time specialized instruction, as well as the therapeutic, supportive, structured environment and counseling he requires in order to benefit from the instruction he receives. K.B. will begin receiving a FAPE as soon as he begins attending The Children's Guild. Without this remedy, K.B., who has already been denied a FAPE for over two years, the entirety of his time as a DCPS student, will only continue to suffer in his emotional, behavioral and academic development devoid of the educational services to which he is entitled.

**IV.    Rule LCvR 7(m) Statement**

On May 3, 2007, undersigned counsel spoke via telephone with Edward Taptich, Esq. counsel for Defendant, in a good faith effort to discuss this motion and determine whether there is any opposition to the relief sought. The parties were unable to agree to any resolution. Mr. Taptich expressed Defendants' opposition to this Motion and the relief sought herein.

**V. Conclusion.**

For the foregoing reasons mentioned in this Memorandum, Ms. Davis satisfies the four-prong test for injunctive relief. Therefore, Ms. Davis respectfully requests that this Court grant her Motion for Preliminary Injunction and order Defendants to immediately

place and fund K.B. at The Children's Guild with all necessary special education and

related services.

Respectfully submitted,

Yael Zakai
D.C. Bar No. 483289
*Pro Bono* Counsel for Ms. Davis
The Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001
202-467-4900 x513
Fax: 202-467-4949
yzakai@childrenslawcenter.org

Laura N. Rinaldi
D.C. Bar No. 480096
*Pro Bono* Counsel for Ms. Davis
The Children's Law Center
616 H St., NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 518
Fax: 202-467-4949
lrinaldi@childrenslawcenter.org

Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)

I, Yael Zakai, undersigned counsel, hereby certify that I am providing legal representation without compensation for Plaintiff, Sherina Davis, in this matter, and that I am a member in good standing of the District of Columbia Bar. Furthermore, I hereby certify that I have personal familiarity with the Local Rules for United States District Court for the District of Columbia.

I certify under penalty of perjury that the foregoing is true and correct. Executed on May 4, 2007.

Yael Zakai
D.C. Bar No. 492389
*Pro Bono* Counsel for Ms. Davis
The Children's Law Center
616 H St.,NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 513
Fax: 202-467-4949
yzakai@childrenslawcenter.org

<u>Certification Pursuant to LCvR 83.2(g) and LCvR 83.2(j)</u>

I, Laura Rinaldi, undersigned counsel, hereby certify that I am providing legal representation without compensation for Plaintiff, Sherina Davis, in this matter, and that I am a member in good standing of the District of Columbia Bar. Furthermore, I hereby certify that I have personal familiarity with the Local Rules for United States District Court for the District of Columbia.

I certify under penalty of perjury that the foregoing is true and correct. Executed on May 4, 2007.

Laura N. Rinaldi
D.C. Bar No. 480096
*Pro Bono* Counsel for Ms. Davis
The Children's Law Center
616 H St.,NW, Suite 300
Washington, DC 20001
202-467-4900, ext. 518
Fax: 202-467-4949
lrinaldi@childrenslawcenter.org

## DECLARATION OF SHERINA DAVIS IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Sherina Davis declares and says as follows:

1.      I am the mother of K.B.

2.      I reside at 9 Temple Ct., NW, Washington, DC 20001.

3.      I have lived in the District of Columbia my entire life.

4.      K.B. has lived in the District of Columbia his entire life.

5.      K.B. began attending Walker Jones Educational Center ("Walker Jones EC") as a Head Start student in the 2004-2005 school year.

6.      During K.B.'s 2004-2005 school year, he struggled a lot with his academics.

7.      K.B.'s Head Start teacher expressed her concerns to me about his academic difficulties.

8.      During the 2004-2005 school year, DCPS did not provide K.B. with evaluations for special education.

9.      DCPS did not provide me with notice of my procedural safeguards under the IDEIA during K.B.'s 2004-2005 school year.

10.     DCPS did not provide me with any written documentation of its refusal to initiate the special education evaluation or referral process for K.B. during his 2004-2005 school year.

11.     K.B. attended Walker Jones EC as a kindergarten student during the 2005-2006 school year.

12.     As a kindergarten student, K.B. would not listen to directions, was aggressive with others, got into fights with other children, and would not calm down when teachers attempted to re-direct him.

13.     As a kindergarten student, K.B. required constant supervision with his classwork.

14.     Because K.B.'s kindergarten teacher was often unable to calm K.B. down in the classroom and keep him on task, K.B.'s teacher would regularly send him to other classrooms and to the office.

15. DCPS did not provide K.B. with evaluations for special education during the 2005-2006 school year.

16. DCPS did not provide me with notice of my procedural safeguards under the IDEIA during the 2005-2006 school year.

17. DCPS did not provide me with any written documentation of its refusal to initiate the special education evaluation or referral process for K.B. during the 2005-2006 school year.

18. K.B. is not able to read.

19. K.B. does not have any friends at school.

20. K.B. throws furniture and other objects in his classroom.

21. K.B. engages in self-injurious behavior at school, such as banging his head on his desk.

22. K.B. is verbally and physically aggressive at school.

23. K.B. has great difficulty calming down after an altercation at school.

24. K.B. is often removed from class by security and sent to the office.

25. K.B. is often unable to remain in the classroom and therefore leaves on his own without permission.

26. Due to my concerns about K.B.'s behavioral, emotional, and academic difficulties, in October 2006, I requested that DCPS conduct special education evaluations for K.B.

27. On or about November 1, 2006, K.B. was found by a neighbor in the middle of the school day off of school property at a neighborhood playground, where he was playing unattended with another young child.

28. K.B. was playing unattended near a major intersection with a constant flow of heavy traffic and entrance and exit ramps to a major highway.

29. I was under the assumption K.B. was in school during this time.

30. When my neighbor found K.B. at the playground, she returned him to my home.

31. I inquired with the school staff as to why K.B. was unattended off of school property during school hours.

32.    Walker Jones EC officials were unaware of his whereabouts during the time that K.B. was on the playground off of school property.

33.    Over the course of this school year, K.B. has returned home from school with a variety of injuries, including but not limited to a gash on his head and a wound from being stabbed with a pencil.

34.    School officials never provided me with any explanation regarding any of these injuries.

35.    It is clear to me that the staff at Walker Jones EC cannot keep K.B. safe and free from harm.

36.    Because K.B. is not safe at Walker Jones EC and because DCPS has not provided an appropriate school placement for K.B., K.B. is currently not attending school.

37.    I requested that home instruction be provided for K.B. or that school work be sent home for him to complete while I await K.B.'s placement in an appropriate school where he will be safe.

38.    I attended the December 20, 2006 Multi-Disciplinary Team/Individualized Educational Program meeting for K.B.

39.    At this meeting the Multi-Disciplinary Team/Individualized Educational Program team agreed that K.B. needed a full-time therapeutic special education school.

40.    The team agreed that Walker Jones EC is not a full-time therapeutic special education school, and that K.B. needed a new school.

41.    I attended the March 5, 2007 Multi-Disciplinary Team/Individualized Educational Program meeting for K.B.

42.    At this meeting, DCPS refused to discuss and determine a new school for K.B. to attend.

43.    My attorney, Yael Zakai, then requested at this meeting that we schedule a Multi-Disciplinary Team/Individualized Educational Program placement meeting to discuss and determine a new school for K.B. as soon as possible.

44.    DCPS refused to schedule a placement meeting for K.B.

45.    Ms. Whitehead explained that representatives from DCPS headquarters would need to review K.B.'s documentation and determine a new school for him.

46.    No DCPS representatives have contacted me to schedule a Multi-Disciplinary Team/Individualized Educational Program placement meeting for K.B.

47.    No DCPS representatives have contacted me in regards to discussing or determining a new school placement for K.B.

48.    No DCPS representatives have contacted me to schedule a resolution session following my filing of a due process complaint on April 3, 2007.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on ___5 - 3 - 07___                    Sherina Davis

**EXHIBIT**
**P-2**

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

## I. IDENTIFICATION INFORMATION

Student Name: Last B▓▓▓    First K▓▓▓    MI

Student ID 9126089    Soc. Sec. No.    Age: 6    Grade 01

Gender ☒ M ☐ F    Date of Birth ▓▓/2000    Ethnic Group Black

Address 9    Temple Ct NW    NW
House No    Street Name    Quadrant   Apartment #

☐ Non-attending    Washington    DC    20001
City    State    Zip Code

Attending School Walker-Jones Elementary    Home School

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent    Ms. Davis/ Ms. Zakai

Address of (if different from student):    ☒ Parent ☐ Guardian ☐ Surrogate

House No    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home (202) 789-2438    Work

## II. CURRENT INFORMATION

Date of IEP Meeting: 03/05/2007
Date of Last IEP Meeting:
Date of Most Recent Eligibility Decision:

Purpose of IEP Conference:
☒ Initial IEP    ☐ Review of IEP
☐ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment:
Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)
☐ BEHAVIOR    ☐ TRANSPORTATION
☐ ESY    ☐ TRANSITION

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| **Student** | English | English | English | | Oral |
| **Parent** | English | English | English | | Rdg / Written |
| **Home** | English | English | English | | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | | | SpecEd | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Ses. | Time | Total | Ses. | Time | Total | Hr./ Min | D/W/M | | | # | wks/mos |
| Specialized Instruction | 0.00 | 0.00 | 0.00 | 1.00 | 30.5 | 30.50 | Hrs | Week | Special Education Teacher/P | 03/06/2007 | 10 | Month |
| Social Work Services | 0.00 | 0.00 | 0.00 | 2.00 | 1.00 | 2.00 | Hrs | Week | School Social Worker | 03/06/2007 | 10 | Month |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **TOTAL HOURS:** | 0.00 | | | 32.50 | | | **Total Combined Hours Per Week:** | | | | | |

## V. Disability(ies) Emotionally Disturbed

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☐ 21-60%    ☒ 61-100%
Percent of time NOT in a General Education Setting 101.00%

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Ms. Davis
Parent

Ms. Whitehead
Special Ed

Ms. Hines
General Ed Teacher

Ms. Whitehead
LEA Representative

Dr Johns Gibson
Principal or Designee

Ms. Mann
Student

Ms. Theodora Jackson    _Theodora Jackson_
School Psychologist

Yair Zakai, Parent's Attorney, The Children's    _Yair Zakai_
Law Center

Special Ed Teacher

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _____    Date _____

District of Columbia Public Schools    04-02-2004    Division of Special Education    Appendix - A    IEP Page 1 of 4

DRAFT

| Student Name    K_____ | Managing School  Walker-Jones Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9126089    DOB ____/2000 | Attending School  Walker-Jones Elementary | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments:** ☐

**Academic Areas: (Evaluator)** Ms. Theodora Jackson. M.Ed.

**Score(s) When Available**

Math Strengths:

> Simple Math facts.

Impact of disability on educational performance in general education curriculum:

> Not on grade level can not put facts to paper.

Reading Strengths:

> Oral comprehension.

Impact of disability on educational performance in general education curriculum:

> Word identification and reading fluency prevents on grade level progress.

Math Cal.    90    SS
Math Rea.    76    SS
See goal page: 2
Date:  02/05/2007

Rdg. Com    92    SS
Rdg. Basic    84    SS
Written Ex.   0.0
See goal page: 3
Date:  02/05/2007

**Communication (Speech & Language) (Evaluator)** _____

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp. Lang.    _____  _____
Rec- Lang.    _____  _____
Artic         _____  _____
Voice         _____  _____
Fluency       _____  _____
Exp. Voc.     _____  _____
Rec. Voc.     _____  _____
See goal page: _____
Date: _____

**Motor/Health (Evaluator)** _____

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**
_____  _____
_____  _____
See goal page: _____
Date: _____

**Social Emotional Behavioral Areas: (Evaluator)** _____

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____  _____
_____  _____
See goal page: _____
Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)** _____

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____  _____
_____  _____
See goal page: _____
Date: _____

**Prevocational Skills: (Evaluator)** _____

Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____  _____
_____  _____
See goal page: _____
Date: _____

DRAFT

| Student Name   K██████ B████ | Managing School   Walker-Jones Elementary | DCPS · IEP |
|---|---|---|
| Student ID Number 9126089          DOB ███/2000 | Attending School   Walker-Jones Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: | 1 |

Area addressed by goal:   Academic Areas: Reading

**ANNUAL GOAL: (including mastery criteria.)**

To improve reading skills by one year's growth.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Decode regularly spelled one to two syllable words fluently in decodable text by applying the most common letter-sound correspondences, including the sounds represented by:single letters,consonants/vowels, consonant blends bl, st, tr,consonant diagraphs (e.g., th, sh,ck) wirh80% accuracy | | Weekly |
| Use knowledge of inflectional endings (e.g s, ed, ing) to identify base words with 80% accuracy. | | Weekly |
| Use knowledge of base words to to predict the meaning of compound words(e.g, football, popcorn, daydream) with 80% accuracy. | | Weekly |
| Read words with common spelling patterns(e.g, -ite,-iate) in decodable text with 80% accuracy. | | Weekly |
| Recognize high -frequency words and irregular sight words ( e.g, the, have, said, come, give, of) with 80% accuracy. | | Weekly |
| Generate the sounds from all the letters and letter patterns, including consonant blends, and long and short vowel patterns,(phonograms) to combine those sounds into recognizable words with 80% accuracy. | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☒ Chart   ☒ Test   ☐ Documented Observation   ☐ Report   ☐ Other _____

District of Columbia Public Schools       07-02-2001       Division of Special Education       Appendix - A       IEP Page 3 of 4

| Student Name | K— B— | | Managing School | Walker-Jones Elementary | | DCPS - IEP |
| Student ID Number | 9126089 | DOB | —/2000 | Attending School | Walker-Jones Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: | 2 |

Area addressed by goal:  Academic Areas: Math

**ANNUAL GOAL:** (including mastery criteria.)

To improve math skills by one year's growth.

Provider(s):  Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Demonstrate the ability to use conventional algorithms for additional and subtraction ( two two-digit whole numbers) with 80% accuracy. | | Weekly |
| Know addition and subtraction facts (addends to 10) commit to memory, and use them to solve problems with 80% accuracy. | | Weekly |
| Demonstrate the ability to fluently add and subtract one-and two digit whole numbers that do not require regrouping with 80% accuracy. | | Weekly |
| Use mental arithmetic to find the sum or difference of two one-digit whole numbers with 80% accuracy. | | Weekly |
| Identify one more than, one less than, ten more than, ten less than for any number up to one hundred with 80% accuracy. | | Weekly |
| Understand and use the inverse relationship between addition and subtraction(e.g, 8 +6=14,is equivalent to 14-6=8) to solve problems and check solutions with 80% accuracy. | | Weekly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☐ Documented Observation  ☐ Report  ☐ Other

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 3 of 4

DRAFT

| Student Name    K      B | | Managing School  Walker-Jones Elementary | DCPS · IEP |
|---|---|---|---|
| Student ID Number  9126089 | DOB  /2000 | Attending School  Walker-Jones Elementary | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**  ☐  Additional Comments: ☐          Goal Number: ☐ 3

Area addressed by goal:  Acadmic Area: Written Expression

**ANNUAL GOAL:** (including mastery criteria.)

To improve written expression by one year's growth.

Provider(s):  Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Write or dictate stories that have a beginning, middle, and end and arrange ideas in a logical way with 80% accuracy. | | Weekly |
| Write or dictate sentences for a friendly letter with 80% accuracy. | | Weekly |
| Print legibly in manuscript upper-and lower- case letters of the alphabet, and use them to make words with 80% accuracy. | | Weekly |
| Write in complete sentences with 80% accuracy. | | Weekly |
| Distinguish among declarative, exclamatory, and interrogative sentences, and correctly use periods, exclamation marks, or question marks at the end of the sentences with 80% acccuracy. | | Weekly |
| Capitalize the first word of a sentence, names of peoples, and the pronoun I with 80% accuracy. | | Weekly |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____ |

District of Columbia Public Schools          07-02-2001          Division of Special Education          Appendix - A          IEP Page 3 of 4

DRAFT

| Student Name | K_____ B_____ | Managing School | Walker-Jones Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9126089 | DOB 07/19/2000 | Attending School Walker-Jones Elementary | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | Additional Comments: ☐ | | Goal Number: 4 |
|---|---|---|---|

Area addressed by goal: Social Emotional Behavioral

**ANNUAL GOAL: (including mastery criteria.)**

Keith will improve his ability to manage frustration in the school setting by achieving the following objectives.

Provider(s): School Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| In counseling sessions, K_____ will develop acceptable solutions to problems/triggers he faces in class 80% of the time. | | Monthly |
| When given hypothetical situations, K_____ will replace negative talk and verbal aggression with appropriate classroom speech (compliments, invitations to play, discussion of acceptable topics) 80% of the time. | | Monthly |
| During counseling sessions, K_____ will describe appropriate listening behaviors and demonstrate them consistently 80% of the time. | | Monthly |
| During role-plays, K_____ will describe and demonstrate appropriate ways to manage frustration in the sessions 80% of the time. | | Monthly |
| During sessions, K_____ will develop verbal scripts to use when he frustrated to get his needs met outside of the session 80% of the time. | | Monthly |
| In the school setting, K_____ will refrain from physical aggression in the classroom 90% of the time. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

DRAFT

| Student Name | K▇▇ ▇▇▇ | Managing School | Walker-Jones Elementary | DCPS - IEP |
| Student ID Number | 9126089 | DOB ▇▇/2000 | Attending School | Walker-Jones Elementary | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>general education</u>? ☐ Yes ☒ No

Explanation for removal out of regular education classroom.

Student requires behavior interventions and modifications that cannot be met within the general education classroom

### X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for <u>testing</u>:  ☐ None needed

| | |
|---|---|
| Timing/Scheduling: | Breaks, varied activities, opportunity to move, Time extensions |
| Setting: | Preferential seating, Reduced, minimalized distractions, Special seating/proximity to monitor |
| Presentation: | Read directions/test to student |
| Response: | Oral responses to tests/oral reports |
| Equipment: | |

### XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers without standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V  Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

### XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☒ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

**Modifications:**
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

### XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Out of General Education Classroom | Accepted | |
| Combination General Education and Resource Classro | Rejected | Potential physical harm to self or others due to a |
| In General Education Classroom Setting | Rejected | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Development of behavior intervention plan

DISTRICT OF COLUMBIA PUBLIC SCHOOL
WASHINGTON, D.C.

Multidisciplinary Team
(MDT)
MEETING NOTES

Initial IEP **Meeting Notes**

STUDENT: K⬤     B⬤     SCHOOL: Walker-Jones Elementary    DATE: 03/05/2007

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Ms. Davis |  | Parent/Guardian |
| Ms. Whitehead | _(signature)_ | Special Ed |
| Ms. Hines |  | General Ed Teacher |
| Ms. Whitehead | _(signature)_ | LEA Representative |
| Dr. Johns Gibson | _(signature)_ | Principal or Designee |
| Ms. Mann | _(signature)_ | ~~Student~~ _School Psych_ |
| Ms. Theodora Jackson | _Theodora Jackson_ | School Psychologist |
| _Yael Zakai_ | _Yael Zakai_ | _Parent's Attorney   Children's_ |
| _Clinic/statt. Lawyer_ | _Clinic/statt. Lawyer_ | _Sp Ed Teacher Law Ctr_ |

An initial IEP was held today for K⬤ B⬤ a first grade student at Walker Jones Education Center. Introductions were made. Parent Procedural manual was provided to the parent who signed.
Ms. Jackson conducted another educational assessment as well as the Conners Rating Scale. K⬤ has a lot of knowledge and prefers to complete academic tasks in his head. For example, he likes to work math problems in his head or give answers without having to write them down. However, as work becomes more complicated, mental work becomes more difficult to do. he responds best when he has a visual cue. He does not like manipulatives and handwriting is laborious. He does not like to write, and he reverses letters and numbers; however, he self-corrects his reversals when he writes. His is at the pre-reading stage. He is easily distracted but also easily redirected in one-on-one settings. Teachers can help him follow their speech by alternating their pitch, rate of speaking, and tone. Comprehension skills are good. Other recommendations are included in the report.

Ms. Hines has been K⬤ regular education teacher for about 40 days. He loves manipulatives, does not speak a lot, can entertain himself with hands-on learning activities such as flashcards and books, and can give you answers even when it seems like he is not listening. He separates himself during academic time and does not turn in written work, although he will attempt it. He prefers not to even copy sentences from the board.

The psychologist will confer with the speech therapist about the results of the educational assessment and K⬤ phonemic awareness. The team is requesting a speech screening and a hearing screening to rule out more serious language concerns. The team agreed to additional assessments: occupational therapy, speech screening and hearing screening to assist the team in determining if a Learning Disability also exists.

K⬤ will receive 1 hour of group and 1 hour of individual counseling

The Parent ☑ is present ☐ is **not** present at the meeting.

DRAFT

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

| MDT |

STUDENT: _____ K▉ B▉ _____    SCHOOL: Walker-Jones Elementary    DATE: 03/05/2007

As for the Conners Rating Scale, the parent rating scale indicates that K▉ maladaptive behaviors appear to be situational and his scores were not clinically significant. The teacher rating scale indicates clinically significant scores across all domains. The Conners Rating Scale at this time does not support a diagnosis of ADD/ADHD. At school and at home, his behavior appears to be triggered or exacerbated by the presence of one of his older sisters.

His current teacher uses a behavior intervention plan in class. Ms. Whitehead, Ms. Mann, and Ms. Hines will confer to develop an individualized Behavior Intervention Plan for K▉ With his current teacher, K▉ will at times tell his teacher when he needs to go to the office as a coping strategy, and he will apologize later for his actions.

The team agrees that K▉ will benefit from the following classroom and testing accommodations: immediate verbal feedback to reinforce appropriate behaviors, proximity to students modeling appropriate behavior and proximity to teacher, minimal distractions, longer tasks divided into small components (for example, a page of 15 arithmetic problems could be cut into three sections so that K▉ completes only 5 problems at a time), periodic stretch breaks, assistance channeling energy into acceptable activities (i.e: allowing him to stand, running an errand, performing classroom duties, etc.), highlighting, underlining, and coloring to emphasize task directions, teacher assistance by teacher to help K▉ maintain attention by altering his/her volume, tone and rate of verbal presentations, cluster information semantically by meaning to assist K▉ in organizing information and materials meaningfully, multi-sensory instruction and activity-based approaches including periods of short activities with frequent feedback, repeat and simplify directions using cues, prompts, or models to elicit correct responses, using one modality when introducing new concepts then use additional modalities for practice and reinforcement, implement reading program to enhance pre-reading abilities, and make and send home weekly vocabulary words that are in flashcard mode to assist him in practicing the words. Behavioral accommodations include: a cooling off period to help him de-escalate, ability to remove himself to regain composure, access to therapist in crisis to help him regroup, low student-staff ratio.

The MDT will forward this package to the DCPS site review committee for immediate consideration of a new, full-time placement to meet Keith's needs as identified in the Individualized Education Plan. K▉ urgently requires immediate placement to address these needs.

**EXHIBIT**
**P-3**

MDT

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

### MULTIDISCIPLINARY TEAM (MDT)
**Eligibility Meeting Notes**

MEETING DATE: 12/13/2006

STUDENT: K___ B___                    SCHOOL: Walker-Jones Elementary

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Ms. Davis | | Parent/Guardian |
| Ms. Whitehead | | Special Ed Teacher |
| Ms. Perna | | General Ed Teacher |
| Ms. Whitehead | | LEA Representative |
| Dr. Johns Gibson | | Principal or Designee |
| Ms. Mann | | Student |
| Dr. Lewis Gray | | School Psychologist |
| Ms. Bonham | _Angela Bonham_ | Speech Pathologist |
| _____ | | |

An eligibility was held for K___ B___ a first grade student at Walker Jones Education Center. K___ was referred for testing due to his behavior of non compliance, verbal and physical aggression, and refusal to remain in class. He has left not only the class but also the school putting his safety at risk. His mother Ms. Davis was very concerned about her son. Dr. Gray reviewed his evaluation of K___.

Dr. Gray: reports he was very compliant with him the tester however he has observed him in very negative situations with others. His scores in relationships with others indicated he appears to be a student with Emotional Disturbance. His academic scores indicate he has the intellectual ability to achieve however his scores due not indicate he is achieving. He has difficulty calming himself down after he has had an altercation with someone. His scores in the area of Math indicate that math is his strength, however he is not achieving in this area due to behavioral incidents. He is often removed from class by security and is often sent to the office.

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT  AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT K___ B___ ____

☒ **IS ELIGIBLE** FOR SPECIAL EDUCATION AND RELATED SERVICES
   ☐ TEAM WILL COMPLETE IEP
   ☒ TEAM WILL SCHEDULE IEP MEETING    Proposed Meeting Date : 01/18/2007
   ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

☐ **IS NOT ELIGIBLE** FOR SPECIAL EDUCATION
   ☐ STUDENT IS REFERRED BACK TO THE TAT
   ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: _____ K⬤ B⬤ _____    SCHOOL: Walker-Jones Elementary    DATE: 12/13/2006

Ms. Mann: K⬤ is the one who offers to help his mother with chores. He is often the object of his sister's attacks for no apparent reason. He has a various range of emotions, he has difficulty with social emotional interactions. He does not attend any after school activities. Ms. Mann states he will need therapy individual, and family to assist cope with the family dynamics.

Ms. Bonham: Speech pathologist states he does not appear to require testing for speech testing at this time he has no difficulty communicating his needs and no indiction in the psychological results show a need for testing in this area either.

Ms. Perna: K⬤ disrupts the other students in the class, threw objects around the class three times, basically destroyed the class. One on one he can complete the work, very good vocabulary for his age, his writing skills are not complete, his math test was good he received the highest score in the class. Good verbal comprehension. He has no real friends but people he can get in to mischief with and can entertain and he has self injurious behavior, hitting his head on the chair. Good at making connections and enjoys story time and can answer questions.

The team feels K⬤ is a student that qualifies for specialized services as a student with a diagnosis of Emotional Disturbance, and will need a full time therapeutic program.

Ms. Zakai: Would like to request more detail test for the educational evaluation, a full battery and sub-test occupational therapy evaluation, along with the Connors.

**EXHIBIT**

P-4

## Johns-Gibson, Janette (ES)

| | |
|---|---|
| **From:** | Bullock, Bernadette (SEID) |
| **Sent:** | Thursday, February 15, 2007 6:06 PM |
| **To:** | Johns-Gibson, Janette (ES) |
| **Cc:** | Whitehead, Deidra (ES) |
| **Subject:** | RE: I need Help with the Davis/Boykins Family |
| **Importance:** | High |

*[handwritten: This Email list Re: problems Boykins Davis]*

I did get your message. I am only in the office today. I will be away from the office all of next week. I see below that you have already made contact with Quinne Harris-Lindsey in the Office of the General Counsel. If you need a lawyer to make contact with another lawyer, Quinne would be the better person to assist you with that. The OGC should be able to assist you in trying to resolve the legal issues in this case. If you think it might help to go to mediation please feel free to contact one of my staff assistants working with me on mediation matters. Cheryl Morton at 202/442-5566 or Ree Baskerville @ 202/442-5693 can answer your questions in regards to mediation. I will be happy to assist you upon my return back to the office on February 27th should you still need assistance in this matter, but hopefully Quinne or someone on her staff will be able to assist you with your legal issues. Thank you.

*Bernadette Bullock, Esq.*
*Director of Mediation Services &*
*Early Dispute Resolution Office*
*State Enforcement and Investigation Division*
*District of Columbia Public Schools (DCPS)*
*202/442-5467*
*bernadette.bullock@k12.dc.us*

**From:** Johns-Gibson, Janette (ES)
**Sent:** Thursday, February 15, 2007 11:21 AM
**To:** Bullock, Bernadette (SEID)
**Cc:** Whitehead, Deidra (ES)
**Subject:** FW: I need Help with the Davis/Boykins Family

I left a message earlier...we need a lawyer to talk to the attorney who has been calling etc.... so much more to say. I also need to share the letters from the lawyer with you...
Dr. Johns-Gibson, Principal

**From:** Johns-Gibson, Janette (ES)
**Sent:** Monday, February 12, 2007 9:46 AM
**To:** Harris-Lindsey, Quinne (OGC)
**Cc:** Millet, Francisco (OASUP); Scott, Margaret (OASUP); Veazie, Mina (OASUP); Powell, Diane (SS); Battle, April (ES); Kennard, Maurice (ES); Johns-Gibson, Janette (ES)
**Subject:** I need Help with the Davis/Boykins Family

As a school we are trying desperately to meet the needs of all students. Since September of 06 we have been faced with several problems relating to mental conditions. I have a ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ grader by the name of Keith Boykin ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a ▓▓ ▓▓▓▓▓▓▓▓▓▓▓



K█████ B███████:

- Fights daily
- Throws furniture
- Hits adults
- Says he hates himself and that he was going to kill himself
- Respects no one
- Likes to roll on the floor
- Walks the halls
- Tries to find an exit to leave the building

Note: Today K███ was in a fight and he kicked a student in the mouth... in return the student hit him with a block....the nurse and the school tried to call mom but no answer...the nurse thought he needed stitches at first but then said he did not. I have changed the first grade teacher before because the first one was getting ready to resign because she could not handle K███. he is also being tested.

██████████

███████████████
███████████

P-5

District of Columbia Public
Schools Washington, D.C.

Division of Special Education

# FUNCTIONAL BEHAVIORAL ASSESSMENT

Student K___ B___                           DOB ___/2000    DATE 12/31/2006

School Walk_r Jones EC                      Grade 1st    Special Ed Deidra Whitehead
                                                         Coordinator

**Describe and Veri_ _ the Seriousness of the Problem.**
K___ exhibits very physical aggression toward other students, non compliance, property destruction ,and verbal aggression
toward adults. He _efuses to remain in the class and has left the school on twice. He was prevented from leaving the school
grounds by staff.

| Frequency | D_ ly | Intensity | Extreme | Duration | 30-60 minutes |

**Identify specific c_aracteristics of the behavior that is interfering with learning.**
K___ refusal to _omply with the instructions, and remain in class and the school interferes with his ability to make academic
progress and coul_ place his safety in jeopardy.

**Collect informati_ _n on:** Time when the behavior does/does not occur; Location of the behavior; Conditions when the
behavior does/d_ _es not occur; Individuals present (when most/least likely to occur); Events or conditions that typically
occur before the _ehavior; Events or conditions that typically occur after the behavior; Common setting events; Other
behaviors that a_ _ associated with the problem behavior?
**What environme_tal conditions may affect the behavior?**
*Demands or req_ests made by the teacher that he does not like * When students identify him as the person that is causing
disruption in the _lass during instruction * If he arrives angry because he had an altercation with one of his sisters during
arrival to school.

**What does the s_udent view as positive reinforcement?**
Removal from c_ass and to have the opportunity to visit in the assistant principal's office and work on a project of his choice.

**What interventi_ns were previously attempted, and what were the results?**
K___ is escorte_ to the office by security and provided the opportunity to settle down. He is provided assignments that he can
have success co_npleting.

#### Collect information on possible functions of the problem behavior.

☐ Direct A_sessment
    ☐ Scatte_plots  ☐ ABC Charts  ☐ Rating Rubric  ☐ Amount versus quality of behavior
☒ Indirect _ssessment
    ☒ Interv_ews  ☐ Question___ _ ☐ _____

**Analyze infor_ation using triangulation and /or problem pathway analysis.**
When teacher _ives directives to the class , K___ refuses to comply and disturbs the other children, hits them, throws blocks,
crayons, books_ and scissors He will walk out of the class and if he gets an opportunity the building to attempt to go home.

**Generate a hy_othesis statement regarding probable function of problem behavior.**
**Test the hypo_nesis statement regarding the function of the problem behavior.**
When require_ to be with a teacher he does not want to be with and required to complete assignments he does not like he
engages in dis_uptive, aggressive, non-compliant behavior to avoid the teacher, or to achieve his goal of gaining what he
wants. He wil_ also attempt to abscond.



**EXHIBIT**

P-6

**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

**Walker-Jones Elementary School**
100 L Street, N.W.
Washington, D.C. 20001
(202) 535-1222 – Office • (202) 535-0373 – Fax

NAME: K____ B____

DATE: 10/2/06

GRADE: 1st

Referral Initiated by: A. Perna

TEACHER: A. Perna

## STUDENT DISCIPLINE REFERRAL

**Discipline Problem:**

_____Failure to wear and /or present school I.D. Badge

✓ **In the halls and /or restroom during class time without a pass**

_____Using profane language on school grounds

✓ Disruptive behavior in the school building/school grounds

✓ Failure to obey a lawful order of an administrator/teacher

✓ Fighting and/or Smoking on the school property

_____Accused of stealing someone's belongings

_____Possession of drugs and /or weapons on school property

_____Sexual harassment

_____Tardy for class..... number of times/dates _____

✓ Other Moving furniture / throwing objects at children and around the room.

Before your child can be admitted back to school, **YOU must attend the schedule** conference at: _____ am/pm on _____

_____
Principal/Asst. Principal

PS: Success, One Student at a Time

EXHIBIT
P-7



**Walker-Jones Elementary School**
100 L Street, N.W.
Washington, D.C. 20001
(202) 535-1222 – Office • (202) 535-0373 – Fax

DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

NAME ████████

DATE 10/3/06                    GRADE: 1st

Referral Initiated by: A. Perna        TEACHER: A. Perna

## STUDENT DISCIPLINE REFERRAL

**Discipline Problem:**

———Failure to wear and /or present school I.D. Badge

———**In the halls and /or restroom during class time without a pass**

✓ Using profane language on school grounds

✓ Disruptive behavior in the school building/school grounds

✓ Failure to obey a lawful order of an administrator/teacher

✓ Fighting and/or Smoking on the school property

———Accused of stealing someone's belongings

———Possession of drugs and /or weapons on school property

———Sexual harassment

———Tardy for class..... number of times/dates _____

✓ Other Threw objects around the room (plastic letters, beads, wiggly eyes)

Before your child can be admitted back to school, **YOU must attend the schedule conference at:** _____ am/pm on _____.

Principal/Asst. Principal _____

CPS: Success, One Student at a Time

EXHIBIT

P-8



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

**Walker-Jones Elementary School**
100 L Street, N.W.
Washington, D.C. 20001
(202) 535-1222 – Office • (202) 535-0373 – Fax

NAME: _____

DATE: 10-3-06

GRADE: 1st

Referral Initiated by: A. Battle

TEACHER: Ms. Pegona

## STUDENT DISCIPLINE REFERRAL

**Discipline Problem:**

_____ Failure to wear and /or present school I.D. Badge

**_____ In the halls and /or restroom during class time without a pass**

_____ Using profane language on school grounds

✓_____ Disruptive behavior in the school building/school grounds

✓_____ Failure to obey a lawful order of an administrator/teacher

_____ Fighting and/or Smoking on the school property

_____ Accused of stealing someone's belongings

_____ Possession of drugs and /or weapons on school property

_____ Sexual harassment

_____ Tardy for class..... number of times/dates _____

✓_____ Other Keith bit me on my left hand.

Before your child can be admitted back to school, **YOU must attend the schedule conference at:** _____ am/pm on _____ .

_____
Principal/Asst. Principal

*S: Success, One Student at a Time*

K___ refused to follow instructions
that were given to him in his
classroom, in the main office,
in the cafeteria, and on the
playground. He also threw items
in his classroom. His grandmother
was contacted. His grandmother...

**EXHIBIT**

p-9

# The CHILDREN'S LAW CENTER



## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

November 22, 2006

Janette Johns-Gibson, Principal
Walker Jones Elementary School
100 L St., NW
Washington, DC 20001
*Transmitted via facsimile to:* 202-535-0373

Re:     K⬤ B⬤ (DOB ⬤/00)

Dear Ms. Johns-Gibson:

I am writing on behalf of my client Sharina Davis in regards to the disciplinary action being taken by Walker-Jones Elementary School against her son K⬤ B⬤.

The suspension of K⬤ by Walker Jones E.S. was improper because the necessary procedures required by Chapter 25 of the District of Columbia Municipal Regulations ("DCMR") were not followed, including the provisions requiring proper notice and a conference prior to the suspension.

Furthermore, the suspension was also improper because K⬤ is entitled to additional protections under applicable local and federal law as a child in need of special education. Pursuant to the IDEA, K⬤ is entitled to these protections, as the school is deemed to have knowledge that he is a child with disability due to Ms. Davis' request for and consent to special education evaluations for K⬤. None of the protections or procedures required by the IDEA were provided to Keith.

Because the school failed to follow the proper procedures for K⬤ as required by the DCMR and the IDEA, K⬤ should be permitted to return to school, and will be attending school on Monday, November 27, 2006.

Moreover, K⬤ is entitled under §1415 of the IDEA to expedited evaluations to determine his eligibility for special education, and the supports he needs to succeed in school and receive an appropriate education. Please ensure that special education evaluations are completed for K⬤ prior to December 8, 2006. Upon completion, please fax the evaluation(s) to me at 202-467-4949.

Thank you for your assistance in ensuring that special education evaluations are completed for K⬤ as soon as possible so that he can begin receiving appropriate supports and services. If you have any questions, please do not hesitate to contact me at 202-467-4900 x513.

Sincerely,

*Yael Zakai*

Yael Zakai
Attorney for Sharina Davis

---

# The CHILDREN'S LAW CENTER

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

January 26, 2007

Janette Johns-Gibson, Principal
Walker Jones Elementary School
100 L St., NW
Washington, DC 20001
*Transmitted via facsimile to:* 202-535-0373

Re:    K▮▮ B▮▮ (DOB ▮▮/00)

Dear Ms. Johns-Gibson:

I am writing on behalf of my client Sharina Davis in regards to the disciplinary action being taken by Walker-Jones Elementary School against her son K▮▮ B▮▮.

The five day suspension of K▮▮ by Walker Jones E.S. was improper because the necessary procedures required by Chapter 25 of the District of Columbia Municipal Regulations ("DCMR") were not followed. A letter was simply dropped in Ms. Davis' mail slot regarding the suspension.

Furthermore, the suspension was also improper because K▮▮ is entitled to additional protections under applicable local and federal law as a child in need of special education. Pursuant to the IDEA, K▮▮ is entitled to these protections, as an MDT/IEP team determined on December 18, 2006 that K▮▮ is eligible for special education. None of the protections or procedures required by the IDEA were provided to K▮▮.

Because the school failed to follow the proper procedures for K▮▮ as required by the DCMR and the IDEA, K▮▮ should be permitted to return to school, and will be attending school on Monday, January 29, 2007.

Moreover, on December 18, 2006, the MDT/IEP team determined that K▮▮ required further testing to be completed by DCPS, including complete educational testing to determine whether K▮▮ has any learning disabilities and an occupational therapy evaluation. These evaluations should have been expedited. The MDT/IEP team determined that K▮▮ requires a full-time special education placement, and these evaluation results are urgently required so that K▮▮ can be appropriately placed. If these evaluations have been completed, please fax the reports to me at 202-467-4949. If they have not yet been completed, please arrange immediately for these evaluations to be conducted.

Thank you for your assistance in ensuring that these evaluations are completed for K▮▮ as soon as possible so that he can begin receiving appropriate supports and services in an appropriate placement. If you have any questions, please do not hesitate to contact me at 202-467-4900 x513.

Sincerely,

Yael Zakai
Attorney for Sharena Davis



# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
# DIVISION OF SPECIAL EDUCATION

## Comprehensive Psychoeducational Evaluation

**NAME:** K██ B████
**AGE:** 6 Years, 3 Months
**DATE OF BIRTH:** ██/2000
**GRADE:** st
**SCHOOL** Walker-Jones Learning Center
**TEST DATE:** 11/20/06
**EXAMINER:** Lewis Gray Jr., Ph.D.

**Background Information and Reason for Referral:**

K██ was referred for a comprehensive psychological assessment in order to determine his current level of cognitive, emotional and perceptual motor functioning. K██ is a 6 year old African American male who is currently attending Walker-Jones Learning Center where he is enrolled in the 1st grade.

An interview with his current teacher indicated that K██ has significant difficulty making age appropriate choices, following directions and interacting appropriately with peers and school staff. K██ tends to annoy others, becomes disruptive in the classroom, initiates fights, expresses his anger in poorly controlled ways, bullys others, and has difficulty working or playing quietly. Furthermore, he is noncompliant to teacher directions and instructions and frequently is avoided or rejected by other students.

A review of K██ school record shows a history of school suspensions, disciplinary actions, leaving the classroom without permission, and destroys or damages school property. Academically, K██ has shown good skills in all areas, however, his behaviors interfere with his performance according to his teacher.

At the time of this evaluation K██ reported that he resides with his mother, and three siblings. He reported a good relationship with all family members.

**Behavioral Observations:**

K██ entered the testing session with no evidence of anxiety, fear or withdrawal tendencies. K██ appeared alert and oriented to time, place, person and situation. He was appropriately dressed for the school environment and appeared his stated age of 6 years. Separation from his classroom was uneventful and he willingly accompanied the examiner to the testing room. During the evaluation K██ was cooperative, although at times he needed to be redirected. Rapport was easily established and maintained throughout the evaluation. In general it appeared

Keith Boykii
Page 2

that K███ p t forth a good effort, and results appear to be a valid estimation of his current level of cognitive emotional and perceptual motor functioning.

## Tests Adm nistered and Data Sources:

Wechsler I telligence Scale for Children-Fourth Edition (WISC-IV)
Developme tal Test of Visual-Motor Integration
Devereux I ehavior Rating Scale (School Form)
Behavior A ssessment System for Children, Second Edition (BASC-II)
House-Tre -Person Test (HTP)
Student In rview
Teacher In rview
Review of lecords

## Test Resu ts and Interpretation:

SCORES ! JMMARY

| WISC-IV COMPOSI E | SCORE |
|---|---|
| Verbal Co prehension Index (VCI) | 98 |
| Perceptua Reasoning Index (PRI) | 94 |
| Working M mory Index (WMI) | 83 |
| Processin Speed Index (PSI) | 97 |
| Full Scale Q (FSIQ) | 91 |

## Interpret tion of WISC-IV Results

K███ wa administered ten subtests of the Wechsler Intelligence Scale for Children – Fourth Edition (' /ISC-IV) from which his composite scores are derived. The Full Scale IQ (FSIQ) is derived fi om a combination of ten subtest scores and is considered the most representative estimate f global intellectual functioning. K███ general cognitive ability is within the Average ange of intellectual functioning, as measured by the FSIQ. His overall thinking and reasonin abilities exceed those of approximately 27% of children his age (FSIQ = 91; 95% confiden e interval = 86-96). His ability to think with words is comparable to his ability to reason w hout the use of words. Both K███ verbal and nonverbal reasoning abilities are in the Average ange.

K███ rbal reasoning abilities as measured by the Verbal Comprehension Index are in the Average ange and above those of approximately 45% of his peers (VCI = 98; 95% confidence interval 91-105). The Verbal Comprehension Index is designed to measure verbal reasoning and con pt formation. K███ performed comparably on the verbal subtests contributing to the VCI, su esting that these verbal cognitive abilities are similarly developed.

K███ onverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Average range and above those of approximately 34% of his peers (PRI = 94; 95% confidence

**Keith Boykir**
**Page** 3

interval = 8 -102). The Perceptual Reasoning Index is designed to measure fluid reasoning in the percept al domain with tasks that assess nonverbal concept formation, visual perception and organizatio , simultaneous processing, visual-motor coordination, learning, and the ability to separate fig re and ground in visual stimuli. K█████ performed comparably on the perceptual reasoning s btests contributing to the PRI, suggesting that his visual-spatial reasoning and perceptual- rganizational skills are similarly developed.

K████ abil ty to sustain attention, concentrate, and exert mental control is in the Low Average range. He erformed better than approximately 13% of his age-mates in this area (Working Memory Ir lex = 83; 95% confidence interval 77-92).

K████abi ties to sustain attention, concentrate, and exert mental control are a weakness relative to his verb l reasoning abilities. A weakness in mental control may make the processing of complex ir formation more time-consuming for K████ draining his mental energies more quickly as compar d to other children his age, and perhaps result in more frequent errors on a variety of learning ta ks.

K████abi ity in processing simple or routine visual material without making errors is in the Average r nge when compared to his peers. He performed better than approximately 42% of his peers on th e processing speed tasks (Processing Speed Index = 97; 95% confidence interval 88-106).

**Perceptu: l Motor Functioning:**

K████ vi ual motor integration skills were assessed using the Beery Visual Motor Integration Test. The Beery is a developmental sequence of geometric forms to be copied with paper and pencil. Th s test is used to assess visual motor integration skills, as well as hand eye coordinat on. The results of K████ Beery indicated a mild weakness in visual motor integration skills. He achieved a standard score of 82 and a percentile rank of 12 which fell within the low average r nge in comparison to his agmates. During testing K████ tended to be somewhat impulsive which seems to have contributed to his score. Moreover, impulsivity may give rise to problems with organization and frequent errors on a variety of learning tasks.

**Social/E1 iotional Functioning:**

The resul s of the projective drawing test indicated characteristics associated with immaturity, lack of ir pulse control, and dependency. There was also some indication of aggression and withdraw il tendencies. During the clinical interview K████presented as an emotionally dependei : child who has had some difficulty controlling his impulses. At times K████ likes to have his wn way and may become oppositional if his desires are thwarted.

The resu s of the Devereux Behavior Rating Scale showed an total score within the very significa t range with respect to symptoms associated with Emotional Disturbance. Moreover, his teach r indicated that his interpersonal problems, inappropriate behavior/feelings, depression, and phy: cal symptoms/fears are also at the very significant level and are consistent with an emotion l disturbance.

Keith Boykin
Page 4

The Behavioral Assessment System for Children-Second Edition (BASC-2) results were based on the child's rating of himself.  Any score in the clinically significant range suggests a high level of maladjustment.  Scores in the At-Risk range identify either a significant problem that may not be severe enough to require formal treatment or a potential of developing a problem that needs careful monitoring.

In the Emotional Symptom Index, K█████ scores were all in the At-Risk range and are suggestive of emotional concerns.  In the School Maladjustment Composite K█████ scores were in the Clinically Significant range. Specific areas were Attitude toward School and Attitude toward Teachers. In the Clinical Maladjustment Composite K█████ scores were in the At-Risk range. Specific scores were Atypical Behavior, Locus of Control, Social Stress, Anxiety, Depression and Sense of Adequacy. On the Personal Adjustment subscales, K████ scores were in the At-Risk range on Relations with Parents, and self-reliance. He also scored in the Clinically Significant range on the Interpersonal Relations, and self-esteem subscales.

## Summary and Recommendation:

K███ is a █-year-old child who completed the WISC-IV. His general cognitive ability, as estimated by the WISC-IV, is in the Average range. K█████ verbal comprehension and perceptual reasoning abilities were also both in the Average range (VCI = 98, PRI = 94).

K████ social emotional functioning was assessed to be in the significant range with respect to interpersonal problems, inappropriate behavior/feelings, depression, and physical symptoms and fears according to his teacher. Moreover, K████ tends to be impulsive, disruptive in the school environment, aggressive towards others, has a negative attitude toward school and his teachers and has shown poor academic achievement, although he has the potential to succeed.

K████ perceptual motor functioning is within the low average range with a standard score of 82 and a percentile rank of 12. Results indicate a weakness in visual motor integration skills. Howwever, impulsivity may have contributed to his score.

As a result of this evaluation K████ manifests behaviors that are consistent with an emotional disturbance. These findings will be presented to the MDT/IEP team in order to help develop a program that is consistent with K████ needs and abilities.

It is recommended that an educational assessment be completed in order to rule out any learning deficits.

The following areas should be addressed in order to assist K████ in making a more positive overall adjustment:

Behavioral Difficulties

K████ teachers are encouraged to reinforce his appropriate behaviors by rewarding him with free-time tokens or time to do his favorite activity. Immediate verbal feedback may also be used

**Keith Boyki**
**Page 5**

to reinforce appropriate behavior. For example, the teacher might say, "I like the way you are
sitting next to Jim. You are not touching him and you are keeping your hands in your lap."

K███ parents or guardians are encouraged to reinforce his appropriate behaviors by rewarding
him. Immediate verbal feedback may also be used to reinforce appropriate behavior.

K███ may benefit from sitting in close proximity to students who model appropriate classroom
behaviors.


Lewis Gray Jr., Ph.D.
DCPS Psychologist

K█ B█n
Page 6

**Composite Scores Summary**

| Scale | | Sum of Scaled Scores | Composite Score | Percentile Rank | Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|---|
| Verbal Comprehension (VCI) | | 29 | 98 | 45 | 91-105 | Average |
| Perceptual Reasoning (PRI) | | 27 | 94 | 34 | 87-102 | Average |
| Working Memory (WMI) | | 14 | 83 | 13 | 77-92 | Low Average |
| Processing Speed (PSI) | | 19 | 97 | 42 | 88-106 | Average |
| Full Scale (FSIQ) | | 89 | 91 | 27 | 86-96 | Average |

**Verbal Comprehension Subtest Scores Summary**

| Subtests | | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|---|
| Similarities | | 7 | 9 | <6:2 | 37 |
| Vocabulary | | 18 | 10 | 6:6 | 50 |
| Comprehension | | 12 | 10 | 6:6 | 50 |

**Perceptual Reasoning Subtest Scores Summary**

| Subtests | | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|---|
| Block Design | | 14 | 10 | 6:6 | 50 |
| Picture Concepts | | 9 | 9 | 6:2 | 37 |
| Matrix Reasoning | | 8 | 8 | <6:2 | 25 |

**Working Memory Subtest Scores Summary**

| Subtests | | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|---|
| Digit Span | | 7 | 6 | <6:2 | 9 |
| Letter-Number Sequencing | | 6 | 8 | <6:2 | 25 |

**Processing Speed Subtest Scores Summary**

| Subtests | | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|---|
| Coding | | 30 | 8 | <6:2 | 25 |
| Symbol Search | | 20 | 11 | 6:10 | 63 |

# SUMMARY AND SCORE REPORT

Name: B████, ██ r., K███                    School: Walker-Jones
Date of Birth: ████/2000                    Teacher: Ms. A. Perna
Age: 6 years, 4  months                     Grade: 1.2
Sex: Male                                   ID: 9126089
Date of Testing:  11/06/2006

**TESTS ADMINI TERED**

*WJ III Tests of A chievement*

## SUMMARY

K████ ability to  apply academic skills is within the average range of others at his grade level.

_____  _____
Examiner

Page 2

Summary and S ore Report
B█████, Jr., K██
November 6, 20 6

TABLE OF SCC RES
*Woodcock-Johr son III Tests of Achievement*
Compuscore fo the WJ III, Version 2.0
Norms based o grade 1.2

| CLUSTER/Test | Raw | GE | EASY to DIFF | | RPI | PR | SS(68% BAND) | AE |
|---|---|---|---|---|---|---|---|---|
| ACADEMIC APP █ | - | K.9 | K.6 | 1.3 | 78/90 | 33 | 93 (90-97) | 6-2 |

Form A of the fol wing achievement tests was administered:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Letter-Word Iden fication | 14 | K.6 | K.4 | K.8 | 24/90 | 13 | 83 (80-87) | 5-11 |
| Calculation | 6 | 1.4 | 1.1 | 1.8 | 95/90 | 66 | 106 (99-113) | 6-9 |
| Passage Compr ension | 9 | K.9 | K.7 | 1.2 | 71/90 | 35 | 94 (91-97) | 6-2 |
| Applied Problem | 23 | 1.6 | 1.1 | 2.1 | 96/90 | 70 | 108 (102-114) | 6-11 |
| Writing Samples | 2-A | K.2 | <K.0 | K.7 | 45/90 | 11 | 82 (74-90) | 5-8 |

EXHIBIT
P-12

## MCO DIAGNOSTIC AND ASSESSMENT

Consumer's Name: K___ B_____

Interview Date: ~~12/5/06~~  12-1?-06
Time Started: 3:00 p.m.
Time Ended: 4:05 p.m.

MCO:
☐ AMERIGROUP    ☐ CHARTERED    ☐ HEALTH RIGHT    ☒ HSCSN

**PRESENTING PROBLEM:**

Pt. is a 16 y.o. AА♂ presents c̄ mother who reports pt. been having a lot of behavior problems @ school. Pt. is hyper, disruptive, impulsive, unable to pay attention otherwise gets distracted. Pt. gets into fights c̄ other kids; easily angered; temper tantrums when he doesn't get his way (@ basketball classroom). At home no major behavioral problems at home, he's quiet, follows direction. φ hyperactivity or problems c̄ attention/focus. Pt. seen in other settings than school. φ depressive sx's, φ anxiety; φ sleep problems; appetite is o.k. picky eater. Energy is good; no mood temper tantrums when upset. Pt. admits to ADHD - behavior @ school - φ okay, c/o's or concerns voiced. told about her talked @ school & other c̄ teacher...

**PSYCHIATRIC HISTORY:**

φ ♀ hx. ;  φ ♀ hosp. ;  φ S.A.

**FAMILY PSYCHIATRIC HISTORY:**

φ Ⓢ - very hyper
- φ fam. drug/ETOH abuse.

**MEDICAL HISTORY/MEDICATIONS/ALLERGIES:**

NKDA
φ med. prob.  φ cardiac problems, φ Sz., φ head injuries.

**DEVELOPMENTAL HISTORY:**

Full term pregnancy φ complications.
φ developmental delays.

Consumer's Name: K___ B___

**PSYCHOSOCIAL HISTORY:**

Lives ē mother, 4 older ⑤ ( 14, 12, 11, 7 y.o. ). (F) is incarcerated ( breed OD / off ___ pts life ). ∅ okay separation ____. Attends Walker Smith E.S. 1st grade. IEP testing in progress. grades are "average" — ∅ says he doesn't do well @ school. Trauma / Stressors.— ∅ no physical/sexual abuse.

**MENTAL STATUS:**

Pt. is a 6 y.o. ___ neatly dressed, cooperative, fair eye contact. Speech difficult to understand @ ___ thoughts are disorganized ∅ AVH/S. Mood "fine". Affect full range ∅ SI/HI. Memory intact. Pt. was not hyperactive, able to maintain conversation & follow dir.

**DIAGNOSIS:**

I.  Disruptive Behavior d/o NOS R/o ADHD.  ,  Language d/o NOS
    R/o Learning d/o.
II.  Def.
III.  _____
IV.  School difficulties, social, (F) incarcerated.
V.   60

**RECOMMENDATIONS:**

① Connel Scale Sent  ( Teachers / parent )
② IEP in progress.  Speech therapy assessment to be set up.  ③ F/u ∅ connscale are done.
④ F/u 4wks.

**Recommendations (for service):**

☐ The consumer's current condition indicates the need for office-based mental health services
   Check which box applies: ☐ Medication Management ☑ Individual Therapy ☑ Group Family Therapy
☐ The consumer's current condition requires community based services provided by MHRS.
   Check which box applies: ☑ Community Support ☐ Community-Based Therapy
☐ Intensive community based services are required at this time due to risk of an out of home placement.
☐ The consumer's current condition requires a higher level of care at this time.
   Check which box applies: ☐ Inpatient Psychiatric ☐ Residential ☐ Inpatient Addictions
☐ Consumer's condition requires a referral for a substance abuse assessment.

Interviewer's Signature: _____    Date: 12-18-06

Interviewer's Printed Name: L. Villeds , DO.

2

**The**
# CHILDREN'S
# LAW CENTER

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

February 26, 2007

Ms. Deidre Whitehead, Special Education Coordinator
Walker Jones EC
100 L St., NW
Washington, DC 20001

Re:     Scheduling MDT/IEP Meeting for K⬤ B⬤ DOB ⬤/00

*Transmitted via facsimile to:* 202-535-0373

Dear Ms. Whitehead:

This morning I received from you a Letter of Invitation for an MDT/IEP meeting for K⬤ B⬤ The Letter of Invitation arrived via facsimile on the afternoon on 2/23/07. The date proposed for the meeting was 2/23/07 and the time proposed was 11:00p.m. I have included the Letter of Invitation in this facsimile to you so you can see what I am referring to. Please send me another Letter of Invitation for an MDT/IEP meeting for K⬤ B⬤ with other proposed dates and times.

Also, please send me via facsimile to 202-467-4949 any evaluation reports for K⬤ B⬤ for the evaluations conducted since our last MDT/IEP meeting for K⬤ on 12/18/06. As you know, Walker Jones ES agreed at the 12/18/06 MDT/IEP meeting to provide K⬤ with the full battery of achievement testing (as a complete battery had not been conducted), Conners' Rating Scales testing to determine whether K⬤ has ADHD, and an occupational therapy evaluation. I requested that these evaluation reports be faxed to me as soon as they became available, but to date, I have not received any of the evaluation reports.

Thank you for your assistance in this matter. If you have any questions, please do not hesitate to contact me at 202-467-4900 x513.

Sincerely,

*Yael Zakai*
Yael Zakai
Attorney for Sharena Davis



*The*
# CHILDREN'S
# LAW CENTER

---

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

March 20, 2007

Ms. Deidre Whitehead, Special Education Coordinator
Walker Jones ES
100 L St., NW
Washington, DC 20001
*Transmitted via facsimile to:* 202-535-0373

Re:    K⬤ B⬤ (DOB ⬤/00)

Dear Ms. Whitehead:

I am writing on behalf of my client Sharena Davis following her son K⬤ B⬤ MDT/IEP meeting on March 5, 2007 to request that school work or home instruction be provided for K⬤, to request that you fax me a copy of the Functional Behavioral Assessment that was conducted for K⬤, to follow up with you regarding the scheduling of a placement meeting, and to follow up with you regarding K⬤ outstanding occupational therapy evaluation and hearing screening.

As you know, K⬤ is currently not attending school due to the fact that he is not safe at Walker Jones EC. First, as you mentioned at the March 5, 2007 MDT/IEP meeting, K⬤ was found by a neighbor in the middle of the school day off of school property at a neighborhood playground, along with another young child. The neighbor brought the children to Ms. Davis' home. Ms. Davis informed the school that K⬤ was unattended and off school property during school hours, and she was told by the principal, Dr. Johns-Gibson, that K⬤s teacher did not know of K⬤ whereabouts at the time and was not aware that K⬤ had wandered off of school property unattended. Second, K⬤ has returned home with a variety of injuries, including a gash on his head and a wound from being stabbed with a pencil. Third, as was discussed at the December 20, 2006 IEP meeting, K⬤ has engaged in self-injurious behavior at the school, such as hitting his head on the chair. Because it is unsafe for K⬤ to attend school and DCPS has not yet provided K⬤ a safe and appropriate full-time special education placement, I am writing to request that school work be sent home for K⬤ or that home instruction be provided to K⬤ while he awaits placement at a safe and appropriate school. It is my understanding that Calvin Ashe, School Counselor, told Ms. Davis he will send school work home for K⬤ with Miesha upon receiving a request in writing from Ms. Davis for school work. I have therefore copied Mr. Ashe on this letter. Please coordinate with Mr. Ashe to have work sent home for K⬤ with Miesha or please contact me to arrange for home instruction to be provided.

Because K⬤ is not safe at Walker Jones EC and because the MDT/IEP team that convened on December 20, 2006 determined that K⬤ needs a full-time special education therapeutic program, I requested prior to the March 5, 2007 IEP meeting that a placement meeting be conducted immediately following the March 5, 2007 MDT/IEP meeting. You explained that this would not be possible, as representatives at DCPS headquarters would need to review K⬤ IEP prior to a placement meeting. As you know, at the IEP meeting on March 5, 2007, the MDT/IEP team drafted an IEP for K⬤ which requires K⬤ to be placed in a full-time special education placement for students with emotional disturbances. You stated that a site review committee at DCPS would be reviewing K⬤ documentation to determine appropriate placement(s) for him, that you would need to coordinate with a DCPS placement representative in scheduling the meeting, and that you would contact me as

---

**901 15th Street NW  •  5th Floor  •  Washington, DC 20005**
**Phone (202) 467-4900  •  Fax (202) 467-4949  •  www.childrenslawcenter.org**

soon as possible to schedule the meeting. I have not heard from you since March 5, 2007 with respect to scheduling the MDT/IEP Placement Meeting. Please ensure that this meeting is scheduled immediately.

Additionally, at the March 5, 2007 MDT/IEP meeting, you briefly reviewed a Functional Behavioral Assessment (FBA) you had conducted for K███. I requested a copy of this FBA, but to date, have not received it.

Lastly, as you are aware, K███ also requires additional evaluations. At the December 20, 2006 MDT/IEP meeting, DCPS agreed to provide K███ with an occupational therapy evaluation. At the March 5, 2007 MDT/IEP meeting, DCPS agreed to provide K███ with a hearing screening. At the March 5, 2007 MDT/IEP meeting, I asked you to please contact me to schedule these evaluations so that Ms. Davis could bring K███ to these evaluations. To this date, I have not heard from you to schedule these evaluations.

Please fax the FBA to me at 202-467-4949 and please arrange for school work to be sent home for K███ with his older sister, Miesha Davis or contact me at 202-467-4900 x513 to arrange for home instruction to be provided for Keith. Please also contact me to schedule the MDT/IEP Placement Meeting, and to schedule the occupational therapy evaluation and hearing screening. Thank you for your assistance.

Sincerely,

Yael Zakai
Yael Zakai
Attorney for Sharena Davis

Cc Calvin Ashe, School Counselor

# The CHILDREN'S LAW CENTER

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

March 23, 2007

Ms. Deidre Whitehead, Special Education Coordinator
Walker Jones ES
100 L St., NW
Washington, DC 20001
*Transmitted via facsimile to:* 202-535-0373

Re:    K██ B███n (DOB ███/00)

Dear Ms. Whitehead:

I am writing on behalf of my client Sharena Davis to follow up with you regarding the voicemail and facsimile I received from you on March 21, 2007 regarding K██ B███.

Regarding placement, I understand from your voicemail that a placement meeting cannot be scheduled for K██ yet, as staff at DCPS headquarters have not contacted you yet to schedule a placement meeting for K██. I understand from your voicemail that staff at DCPS headquarters are still searching for an appropriate school for K██. I also understand from your voicemail and facsimile that DCPS is currently not conducting hearing screenings so K██ will not be able to receive the hearing screening from DCPS that was recommended by the Multi-Disciplinary/IEP Team. Regarding the occupational therapy evaluation, I understand that the occupational therapist will be at Walker Jones EC today, and that you will contact me to schedule K██ occupational therapy evaluation.

Additionally, I understand that the speech pathologist is available on Monday and Wednesday to assess K██. If possible, we would like K██ to be evaluated by the speech pathologist at the start of the school day next Monday, March 26, 2007 or Wednesday, March 28, 2007. If so, K██ will accompany his older sister, Miesha Davis, to school that morning. When the testing is completed, Ms. Davis will come to the school to pick K██ up. Please contact me via telephone at 202-467-4900 x513, by facsimile at 202-467-4949 or by e-mail at yzakai@childrenslawcenter.org to confirm whether K██ should come in for the evaluation on Monday or Wednesday morning, and what time the evaluation will be completed so Ms. Davis can be there to pick up K██.

Thank you for your assistance.

Sincerely,

Yael Zakai
Attorney for Sharena Davis

**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

**Office of Special Education**
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

## CONFIDENTIAL REPORT OF EDUCATIONAL EVALUATION

| | | | |
|---|---|---|---|
| Student: | K█ B█ | School: | Walker-Jones EC |
| Date of Birth: | █████2000 | Teacher: | Ms. Hines |
| Chronological Age: | 6 years, 6 months | Date of Evaluation: | 2/05/2007 |
| Student ID: | | Date of Report: | 2/12/2007 |
| Grade: | 1st | Evaluator: | Theodora Jackson, M.Ed. |
| | | | DCPS Certified School Psychologist |

### Reason for Referral

The MDT convened in December 2006 to review assessments. At that time, the advocate requested, and the team agreed to, an educational evaluation to determine K█ B█ current academic functioning. This information, along with previous testing, will be presented to the Multidisciplinary Team to assist in making any necessary educational changes for K█ B█.

### Background Information

K█ B█ is a 6 year old African American male who attends Walker-Jones EC as a first grader. He is the only male child in his family. He resides with his parents and siblings in the neighborhood of his school. K█ had a psychological evaluation completed at the end of 2006 which was presented at his Eligibility meeting to determine if he qualified for special education services.

### Assessment Procedures and Information Sources

Teacher Interview
Review of records
Observation
Woodcock Johnson Tests of Achievement-III (WJ III)

### Behavioral Observations

K█ B█ is a 6 year, 7 month African American male who is a first grader at Walker-Jones Educational Center. He was cooperative and demonstrated good effort as he attempted all tests presented. K█ appeared to enjoy the one-to-one attention and wanted to draw several pictures for this examiner. K█ cooperativeness and his sustained effort in this 1:1 situation indicates that this assessment is a valid measure of his current academic functioning.



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

## Assessment Results and Interpretation

The *Woodcock-Johnson Tests of Achievement-III* is a measure of K████ academic achievement and oral language abilities. Relative strengths and weaknesses among his academic abilities are described in this report. A description of each ability is provided. K████ performance in each broad category is compared to age peers using a standard score range. His proficiency is described categorically, ranging from negligible to average; K████ test performance can be generalized to similar, non-test, age-level tests. Additional interpretation of academic task performance is provided.

*Letter-Word Identification* measures K████ ability to identify letters and words. He was not required to know the meaning of any word. K████ achieved a standard score of 84 and he performed better than approximately 14% of his same aged peers. Keith was able to identify letters in upper and lower case and some basic sight words. However, his performance was hindered by unfamiliar words and his not being able to use phonemic awareness to read words.

*Spelling* measures K████ ability to write orally presented letters and words correctly. He achieved a standard score of 79 performing better than approximately 8% of his same age peers. K████ was able to write dictated individual letters and only a few simple words.

*Passage Comprehension* measures K████ ability to understand what is being read during the process of reading. Test items required Keith to read a short passage and identify a missing key word that makes sense in the context of the passage. K████ achieved a standard score of 92 performing better than approximately 30% of his same age peers.

*Calculation* measures K████ computational skills and automaticity with basic math facts. K████ achieved a standard score of 90 performing better than approximately 24% of his same age peers.

*Math Fluency* measures K████ ability to solve simple addition, subtraction, and multiplication facts quickly. He was presented with a series of simple arithmetic problems to complete in a 3-minute time limit. K████ achieved a standard score of 90 where he had to complete simple math facts rapidly. He seemed challenged by the activity.

*Applied Problems* measured K████ ability to analyze and solve math problems. To solve the problems, he was required to listen to the problem, recognize the procedure to be followed, and then perform relatively simple calculations. Because many of the problems included extraneous information, K████ needed to decide not only

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

the appropriate mathematical operations to use but also what information to include in the calculation. K⬤ achieved a standard score of 76, which is in the low average range. He was able to respond best when presented with a visual cue in addition to the problem. Once the visual cue was either removed or become more ambiguous, he had more difficulty. Also, word problems that required more than one math function were more problematic.

*Broad math* includes mathematics reasoning and problem solving, number facility, and automaticity. K⬤ *mathematics standard score of 81 and this performance was better than 10% of children his age taking this test.*

*Writing Samples* measured K⬤ skill in writing responses to a variety of demands. He was asked to produce written sentences that were evaluated with respect to the quality of expression. K⬤ was not penalized for any errors in basic writing skills, such as spelling or punctuation. K⬤ achieved a standard score of 82 performing better than only 12% of students his age.

*Picture Vocabulary* measured K⬤ oral language development and word knowledge. The task required him to identify pictured objects. This was primarily an expressive language task at the single-word level. K⬤ achieved a standard score of 104 and performing 61% better than his same age peers.

*Handwriting* is a norm-based evaluation of K⬤ handwriting. K⬤ achieved a standard score of 77 performing only better than 6% of students his same age.

## Diagnostic Impressions and Summary

K⬤ math calculation skill is limited to average. His sight reading ability is limited. His spelling is also very limited. K⬤ passage comprehension ability and writing ability are limited. His quantitative reasoning is very limited. K⬤ ability to apply academic skills is within the low average range of others at his grade level. His academic skills are low. When compared to others at his grade level, K⬤ performance is average in math calculation skills and low average in mathematics.

The MDT should review this assessment in conjunction with previous evaluations to assist making relevant educational decisions for him.

## Recommendations and Educational Implications

1.    The MDT should consider this information in determining what academic needs ⬤ may need.

3

**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

**Office of Special Education**
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

2.    ████ tasks should be short, well within his attention span, varied, and gradually increased in length.

3.    Whenever possible, distractions should be minimized in Keith's study area. For example, K████ desk could be placed near the teacher, facing a wall, or in an area with minimal classroom traffic.

4.    Longer tasks may be divided into smaller parts that can be completed at different times. For example, a page of 10 arithmetic problems could be cut into three sections so K████ completes only 5 problems at a time.

5.    K████ would also benefit from periodic stretch breaks during extended lesson plans.

6.    K████ may benefit from assistance in channeling his excess energy into more acceptable activities. For example, teachers may allow him to stand during seatwork or use an activity (e.g., running an errand, arranging classroom materials, cleaning the chalkboard) as a reinforcement for task completion.

7.    Teachers should continue to facilitate K████ attention to detail by having him use highlighting, underlining, or coloring to emphasize task directions or other areas of difficulty.

8.    Teachers should assist K████ in maintaining attention by altering the volume, tone, and rate of verbal presentations.

9.    K████ may benefit from clustering information semantically (by meaning). Learning to organize information and material in meaningful ways may help him better remember where to locate personal belongings and work materials. For example, clothing could be organized into such meaningful categories as school clothes, play clothes, and sleepwear just as work in class can be organized by content area.

10.   K████ teachers should focus on an approach that is activity-based so that K████ is actively engaged in a series of short activities with frequent feedback.

11.   Repeat and simplify directions, using cues, prompts, or models to elicit correct responses.

12.   The teacher should use one modality for introduction of new concepts and other modalities for practice and reinforcement, as Keith will have significant difficulty in attending to more than one modality at a time.

**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

**Office of Special Education**
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

13.    Expose K⬛ to a reading program that enhances and builds upon his pre-reading abilities.  He is ready now he has to be systematically reinforced for moving towards being a reader.

14.    Make and send home vocabulary words encountered in the class weekly. K⬛ teacher can make flashcards (3x5 cards) for K⬛ to practice the words at home.  He can then make sentences that can initially be dictated and written for him, then have him write rebus sentences (pictures and words) and then have him write simple, complete sentences (without pictures).

It was a pleasure to evaluate your son, K⬛ B⬛.  He was cooperative and put forth good effort during the evaluation process.  If you have any questions after this evaluation has been interpreted to you, please do not hesitate to contact the special education coordinator, Ms. Deidre Whitehead on 202-535-1222.

*Theodora Jackson M.Ed.*

Theodora Jackson, M.Ed.
DCPS Certified School Psychologist

Educational Evaluation

B██████, K████                                                            Page 2

February 5, 2007

TABLE OF SCORES: *Woodcock-Johnson III Tests of Achievement*
Report Writer for the WJ III, Version 1.1
Norms based on grade 1.5

| CLUSTER/Test | Raw | GE | EASY to DIFF | | RPI | PR | SS(95% BAND) | | AE |
|---|---|---|---|---|---|---|---|---|---|
| BROAD MATH | – | K.7 | K.2 | 1.2 | 60/90 | 10 | 81 | (73-89) | 5-11 |
| MATH CALC SKILLS | – | 1.1 | K.6 | 1.7 | 80/90 | 27 | 91 | (80-101) | 6-4 |
| ACADEMIC SKILLS | – | K.8 | K.6 | 1.1 | 38/90 | 8 | 79 | (71-86) | 6-3 |
| ACADEMIC APPS | – | K.7 | K.4 | 1.1 | 42/90 | 11 | 82 | (76-88) | 5-11 |

Form B of the following achievement tests was administered:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Letter-Word Identification | 17 | K.9 | K.7 | 1.1 | 25/90 | 14 | 84 | (77-91) | 6-3 |
| Calculation | 4 | 1.1 | K.8 | 1.4 | 70/90 | 28 | 91 | (79-103) | 6-4 |
| Math Fluency | 13 | 1.0 | <K.2 | 2.9 | 87/90 | 24 | 90 | (77-103) | 6-5 |
| Spelling | 13 | K.6 | K.4 | K.8 | 22/90 | 8 | 79 | (69-89) | 6-2 |
| Passage Comprehension | 11 | 1.1 | K.9 | 1.3 | 61/90 | 30 | 92 | (87-98) | 6-5 |
| Applied Problems | 14 | K.1 | <K.0 | K.5 | 17/90 | 6 | 76 | (68-84) | 5-1 |
| Writing Samples | 3-A | K.7 | K.2 | 1.1 | 52/90 | 12 | 82 | (67-98) | 6-0 |
| Picture Vocabulary | 20 | 2.1 | K.8 | 3.6 | 94/90 | 61 | 104 | (94-115) | 7-8 |
| Handwriting | 10 | <K.0 | – | – | – | 6 | 77 | (56-99) | <4-0 |

EXHIBIT
P-17

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

## CONFIDENTIAL REPORT OF PSYCHOLOGICAL EVALUATION ADDENDUM

| | | | |
|---|---|---|---|
| Student: | K&#9679; B&#9679; | School: | Walker-Jones EC |
| Date of Birth: | &#9679;, 2000 | Teacher: | Ms. Hines |
| Chronological Age: | 6 years, 7 months | Date of Evaluation: | 3/2/2007 |
| Student ID: | | Date of Report: | 3/2/2007 |
| Grade: | 1st | Evaluator: | Theodora Jackson, M.Ed. DCPS Certified School Psychologist |

### Reason for Referral

The MDT convened in December 2006 to review assessments. At that time, the advocate requested, and the team agreed to, an addendum to the psychological of an administration of the Conner's Rating Scale-Revised. This information, along with other assessment data, will be presented to the Multidisciplinary Team to assist in making any necessary educational decisions for K&#9679; B&#9679;.

### Background Information

K&#9679; B&#9679; is a 6 year old African American male who attends Walker-Jones EC as a first grader. He is the only male child in his family. He resides with his parents and siblings in the neighborhood of his school. K&#9679; had a psychological evaluation completed at the end of 2006 which was presented at his Eligibility meeting to determine if he qualified for special education services.

K&#9679; reportedly exhibits problematic behaviors in the classroom environment such as making poor choices, not following directions, and interacting inappropriately with peers and school staff. Reportedly, K&#9679; annoys other students, disrupts the classroom, initiates fights, expresses his anger in poorly controlled ways, bullies others, and demonstrates difficulty working or playing quietly. He also is noncompliant with teacher directions and instructions. His behavior, by report, results in him being avoided or rejected by his peers.

School records indicate a history of suspensions and disciplinary actions for leaving the classroom without permission and destroying and/or damaging school property.

Cognitively, K&#9679; B&#9679; achieved a Full Scale IQ of 91, which is in the *average range,* on the WISC-IV administered on 11/20/2006 by Dr. Lewis Gray. Academically, the results of the *Woodcock-Johnson Tests of Achievement-III*, support potential to do on grade level work. (See Psychological and Educational assessment for detailed information and standard scores).

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of Special Education**
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

## Assessment Procedures and Information Sources

Teacher Interview
Review of records
Conners' Parent Rating Scale-Revised (L) – Mrs. Serina Davis
Conners' Teacher Rating Scale-Revised (L) – Mrs. Jacqueline Hines

## Behavioral Observations

K█ B█ is a 6 year, 7 month African American male who is a first grader at Walker-Jones Educational Center.  Keith participated previously in additional academic testing where he was cooperative and put forth good effort.

## Assessment Results and Interpretation

The *Conners' Parent Rating Scale-Revised (L)* was completed by Ms. Serina Davis, K█ B█' mother on 3/2/2007 at Walker-Jones Educational Center.  The *Conners'* evaluates problem behaviors in children and adolescents.  It is suitable for report on youths aged 3 to 17.  The raw scores are translated into T-scores.  T-scores of 65 or above are usually taken to indicate a clinically significant problem that may require further evaluation.

The parent's questionnaire indicates a *mildly elevated profile* (no t-scores above 65 and not more than one subscale elevated above 60) whereas the teacher's profile indicates an elevated profile.  Mrs. Davis' questionnaire resulted in zero T-scores of 65 or above.  Mrs. Davis indicates that some of K█ problems come about *only* when he is around his sister such as:
○ always being on the go,
○ hard to control when out,
○ running or climbing when it is inappropriate, messy or diagnosed, and
○ being spiteful and vindictive.

This suggests that this behavior is seemingly more situational.  It appears that K█ is easily swayed by his sister and it results in trouble for him.  He is apparently not mature enough to make better decisions even though his sister may want him to do something that will put him in trouble.

The *Conners' Teacher Rating Scale-Revised (L),* was completed by Mrs. Jacqueline Hines and resulted in multiple categories on which the T-scores were at or above 65 and reflects his behavior at school.  The teacher's profile shows a T-score of 82 in the Oppositional subscale which indicates that the student is likely to break rules, have problems with persons in authority, and are more easily annoyed and angered



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of Special Education**
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

than most individuals their age. A T-score of 73 on the subscale Cognitive Problems/Inattention suggests that the student may be inattentive with more academic difficulties than normal, have problems with organizing their work, and difficulty completing school work or tasks, as well as appear to have trouble concentrating on tasks requiring sustained mental effort. A t-score of 71 on the Hyperactivity subscale may indicate that the student is having problems sitting still, feel more restless and impulsive than the typical student and have a need to be on the go. A t-score of 71 on the Perfectionism subscale may indicate that the student has set high goals for him/herself and may be somewhat obsessive about their work or tasks. A t-score of 76 on the Social Problems subscale may indicate the student's perception of his relationships with peers is that he/she has few friends, may have low self-esteem and little self-confidence and may experience social detachment from peers.

| Subscale | General Education Teacher | Parent |
|---|---|---|
| Oppositional | 82 | 58 |
| Cognitive Problems/Inattention | 73 | 61 |
| Hyperactivity | 71 | 53 |
| Anxious-Shy | 64 | 51 |
| Perfectionism | 71 | 47 |
| Social Problems | 76 | 45 |
| Psychosomatic* | -- | 43 |
| Conners' ADHD Index | 69 | 63 |
| Conners' Global Index: Restless-Impulsive | 68 | 57 |
| Conners' Global Index: Emotional Lability | 81 | 60 |
| Conners' Global Index: Total | 65 | 59 |
| DSM-IV: Inattentive | 66 | 58 |
| DSM-IV: Hyperactive-Impulsive | 66 | 56 |
| DSM-IV: Total | 67 | 57 |

*Parent questions only

## Diagnostic Impressions and Summary

It is not unusual for a child to exhibit different behaviors at home than at school. The two environments demand different things. School tends to have more rules and is structured whereas home may be more relaxed and requires less structure. The results of the _Conners' Teacher Rating Scale-Revised_ are more in line with the results of _Behavior Assessment System for Children-Second Edition_ as reported in the psychological assessment completed by Dr. Lewis Gray on 11/20/2006.

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of Special Education**
825 North Capitol Street, N.E., 6ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

K▇▇▇ behavior is not consistent across home and school based upon the data collected on the _Conners'_.   A diagnosis of ADHD, according to the DSM-IV,  specifies that some symptoms must have caused impairment before age seven years, some impairment from the symptoms is present in two or more setting (e.g. at school or work and at home), and there must be clear evidence of clinically significant impairment in social, academic, or occupational functioning.

## Recommendations and Educational Implications

1.    The MDT should consider these results in conjunction with the psychological and educational assessments to make the best determination of needed services for K▇▇ B▇▇▇▇.

2.    A functional behavioral assessment should be completed, if it has not already been done.  The resultant Behavior Intervention Plan should then be followed up.


It was a pleasure to have Mrs. Davis to complete the _Conners' Parent Rating Scale-Revised._   Her diligence and support were greatly appreciated.  If there are any questions after this evaluation has been interpreted to you, please do not hesitate to contact the special education coordinator, Ms. Deidre Whitehead on 202-535-1222.


Theodora Jackson, M.Ed.
DCPS Certified School Psychologist



P-18

# The
# CHILDREN'S
# LAW CENTER



---

## THE HEALTH ACCESS PROJECT AT CHILDREN'S NATIONAL MEDICAL CENTER

February 14, 2007

Dr. Janette Johns-Gibson, Principal
Walker Jones Elementary School
100 L St., NW
Washington, DC 20001
*Transmitted via facsimile to:* 202-535-0373

Re: 
    K⬛ B⬛, DOB⬛/00

Dear Dr. Johns-Gibson:

I am writing on behalf of my client Sharena Davis to request meetings at Walker Jones ES regarding her children ⬛ and K⬛ B⬛. I attempted to call Deidre Whitehead, Special Education Coordinator, to schedule these meetings and she informed I would need to speak with you directly before I could arrange any meetings with her. I left a message for you with the secretary who answered the phone at Walker Jones ES on February 13th.

As you know, both K⬛ and ⬛ are struggling greatly at Walker Jones ES and have faced repeated disciplinary action this school year. Given the great difficulty facing Keith and⬛ at Walker Jones ES at this time and the urgency of the situation, I am requesting meetings immediately to discuss the children's needs.

For K⬛ B⬛, I am requesting an MDT/IEP meeting to develop an IEP for K⬛ and discuss and determine an appropriate school placement. It is clear that K⬛ requires an appropriate IEP and an appropriate placement as soon as possible.



Please contact me or have Ms. Whitehead contact me at 202-467-4900 x513 or via facsimile at 202-467-4949 to schedule these meetings as soon as possible.

Thank you for your assistance in this matter.

Sincerely,

*Yael Zakai*

Yael Zakai
Attorney for Sharena Davis

CC: Deidre Whitehead, Special Education Coordinator

---

EXHIBIT
P-19

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM
(MDT)
Meeting Notice

Date: 03/02/2007

Letter of Invitation                                    Re : K___    B____

Dear  Ms. Davis/ M . Zakai

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

Place/Location:

Walker Jones Education Center
100 L Street NW
Washington, DC 20001

Please check ONE date for confirmation, SIGN and return this form to the school by :

☐ Date: 03/05/2007        Time: 11:00 am ; or
☐ Date:                   Time:          ; or
☐ Date:                   Time:

(Meeting date and time has already been confirmed with the parent.
Confirmation will be sent with this Invitation.)  ☒

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

**\*The purpose of this meeting is to:**

☒ \*\*develop/review IEP (including consideration of extended school year (ESY) services   ☐ \*\*discuss CompEd
☒ \*\*review evaluation or reevaluation information      ☒ discuss placement                  ☐ \*consider transition services needs
☒ develop the student evaluation plan (SEP)            ☐ determine manifestation          ☐ discuss quarterly review
☒ discuss documented levels of service                 ☒ discuss eligibility               ☐ behavior plan review
☐ discuss consent for evaluations                       ☐ discuss transfer                 ☐ discuss request for evaluation(s)
☐ discuss termination of service(s)                     ☒ discuss Personal Health Information (PHI)

☐ \*\*review records to support the completion of services as follows:

☐ Graduated          ☐ Certification of IEP       ☐ Aged Out        ☐ Deceased        ☐ Moved out of Jurisdiction
☐ Completion of IEP Requirements                     ☐ Dropped Out     ☐ Other:

**\*\*Placement will be discussed.**

MDT Members:  ☒ Principal or Designee      ☒ General Education Teacher     ☐ Psychologist
              ☒ Parent                     ☒ Special Education Teacher    ☐ Other: _____
              ☒ LEA Representative          ☐ Speech and Language          _____
              ☐ Student                     ☐ Social Worker                _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent: _____

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact
Ms. Deidra Whitehead/ Ms. April Battle ____ at  (202) 535-1222 ____ (school telephone number).

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate
  *                                                    *
_____                                    _____

See attachments, when appropriate, for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

2nd Notice Date: _____   Notice Type: _____   Details: _____         Respond By _____
3rd Notice Date: _____   Notice Type: _____   Details: _____         Respond By _____
\*After the third attempt to contact the parent, the meeting will be held without further notice.

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature _____        Date _____

I acknowledge receipt of the Procedural Safeguards for parents (due process procedures).   ☐ Yes   ☐ No

## DECLARATION OF YAEL ZAKAI IN SUPPORT OF PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

Yael Zakai declares and says as follows:

1. I am an attorney serving as counsel for Sherina Davis.

2. I attended K.B.'s March 5, 2007 MDT/IEP meeting.

3. At this meeting, DCPS did not discuss or determine a new school placement for K.B.

4. At K.B.'s March 5, 2007 MDT/IEP meeting, I requested that DCPS schedule an MDT/IEP placement meeting for K.B. as soon as possible.

5. At that time, DCPS refused to schedule a placement meeting for K.B.

6. Ms. Whitehead, the special education coordinator at Walker Jones E.C., informed me that representatives from District of Columbia Public Schools headquarters would need to review K.B.'s documentation and determine a new school placement for K.B. before a placement meeting could be scheduled.

7. DCPS never contacted me to schedule an MDT/IEP placement meeting for K.B.

8. DCPS never scheduled an MDT/IEP placement meeting for K.B.

9. I filed a due process complaint on behalf of Sherina Davis on April 3, 2007.

10. I received no response, in writing or otherwise, from DCPS to the due process complaint.

11. I filed a Motion for Expedited Hearing on behalf of Sherina Davis on April 4, 2007.

12. I received no response from DCPS to this Motion.

13. DCPS never contacted me to schedule a dispute resolution session in this matter.

14. No resolution session was ever held in this matter.

15. No due process hearing has been scheduled in this matter.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on ___5/3/07___

_Yael Zakai_
Yael Zakai

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



# Due Process Complaint Notice

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.   INFORMATION ABOUT THE STUDENT:

Student Name:  K___ B___                                          Birth Date:  ___/00

Address:  9 Temple Ct., NW

Washington, DC 20001

Home School:  Walker Jones EC

Present School of Attendance:  Walker Jones EC

Is this a charter school?  No          (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student:  Sharena Davis

Address (if different from the student's above):

Phone/Contact Number:  202-789-4016          Fax Number (if applicable):

1

**B.**     **Individual Making the Complaint/Request for Due Process Hearing:**

Name: _____ Sharena Davis _____

Complete Address: __9 Temple Ct., NW_____

_____Washington, DC 20001_____

Phone: (h) _202-789-4016__ (w) _____ (Fax) _____ (e-mail) _____

Relationship to the Student:

√ Parent          ☐ Legal Guardian          ☐ Parent Surrogate

☐ Self/Student   ☐Local Education Agency (LEA)          ☐Parent Advocate

**C.**     **Legal Representative/Attorney (if applicable):**

Name: __Yael Zakai_____

Address: __The Children's Law Center_____

_____901 15th St., NW, Suite 500, Washington, DC 20005_____

Phone: (w) _202-467-4900 x513_____ (Fax) _202-467-4949____ (e-mail) _yzakai@childrenslawcenter.org_

Will attorney / legal representative attend the resolution session?     √ Yes  ☐No

**D.**     **Complaint Made Against (check all that apply):**

√ DCPS school (name of the school if different from page one)_Walker Jones EC_____

☐ Charter school (name of the charter school if different from page one)_____

☐ Non-public school or residential treatment facility (name) _____

☐ Parent

**E.**     **Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint: I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

☐ I wish to waive the Resolution Session Meeting

**F.**     **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

☐ I am requesting mediation as an alternative to the resolution session meeting.

√ I am requesting mediation and a due process hearing.

☐ I am requesting mediation **only** at this time.

**G.**     **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1. What is the nature of the problem, including the facts relating to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

The relevant facts include, but are not limited to the following:

K▉ B▉ is a six year old boy with a severe emotional disturbance. K▉ is currently a danger to himself and others at school. K▉ exhibits self-injurious behavior, including hitting his head on his chair at school. K▉ is verbally and physically aggressive, has great difficulty calming down after an altercation, is often removed from class by security and sent to the office, and he is often unable to remain in the classroom and therefore leaves at will without permission. K▉ has no real friends, as he struggles greatly with interpersonal relationships and his behavior results in him being avoided or rejected by his peers. In fact, K▉ separates himself from his peers in the classroom. Moreover, K▉ is not achieving on grade level. K▉ cannot complete written work and has not yet developed reading skills. Although math is his strength, K▉ is not achieving in this area either. K▉ may also have a learning disability, a speech/language impairment, and/or occupational therapy needs, but this is unknown at this time because DCPS has failed to timely complete all necessary evaluations.

K▉ first struggled with his academic achievement as a student in Head Start at Walker Jones Educational Center. Despite his mother's concerns and his teacher's concerns about his academic abilities, K▉ did not receive special education evaluations. Moreover, DCPS did not provide Ms. Davis with notice of her procedural rights, nor did DCPS provide her with any prior notice of its refusal to initiate the special education referral and evaluation process for K▉.

As a kindergartener at Walker Jones EC, K▉ academic struggles continued, and K▉ also exhibited serious behavioral difficulties. K▉ needed constant supervision with his classwork. K▉ would not listen to directions, was aggressive with others, got into fights with other children, and he would not calm down when teachers attempted to re-direct him following his aggressive episodes and tantrums. Because K▉ teacher was often unable to calm K▉ down in the classroom and keep him on task, K▉ teacher would regularly send him to other classrooms and to the office. Due to K▉ behavioral difficulties and his academic deficits, he simply could not complete his classwork. Despite his serious academic and social-emotional difficulties and the concerns expressed by his teacher and his mother, K▉ was not evaluated for special education. Moreover, DCPS failed again to provide Ms. Davis with notice of her procedural rights or to provide her with any prior notice of its refusal to initiate the special education referral and evaluation process for K▉.

This school year, as a first grader at Walker Jones EC, K▉ academic and social-emotional difficulties have intensified. Because he struggles so mightily with writing, K▉ does not complete written work, and often refuses even to complete simple copying exercises that require him to write. When K▉ writes, he reverses both letters and numbers. Moreover, although K▉ is nearing the end of first grade, he is not yet reading. K▉ has not been achieving on grade level in any of his academic subjects this year. It is clear that he simply has not been able to access his education. As his social-emotional difficulties have escalated, each day at school has been a tremendous struggle for K▉, which makes it impossible for him to learn.

It wasn't until this school year and only after Ms. Davis' request for evaluations in October 2006 that K▉ was finally evaluated for special education, and even then, DCPS failed to fully evaluate K▉. K▉ November 2006 psycho-educational evaluation did not fully assess K▉ in all areas of suspected disability. The evaluation did not include a complete battery of achievement testing. In addition, despite concerns on the part of K▉ teachers and Ms. Davis about K▉ impulsiveness, difficulty completing assignments, poor organizational skills, and short attention span, no assessments were conducted to determine whether K▉ also suffers from ADHD. Moreover, although Ms. Davis

3

and school staff had concerns about K___'s great difficulties in writing and his aversion to writing, no occupational therapy evaluation had been completed. An MDT/IEP meeting convened for K___ on December 20, 2006, and the team determined that K___ qualifies for special education as a student with an Emotional Disturbance, and requires a full-time placement. However, because DCPS did not fully evaluate Keith, the team was unable to determine whether K___ also suffers from a learning disability and/or ADHD, and whether K___ requires occupational therapy services. Therefore, Ms. Davis requested that DCPS conduct further achievement assessments for K___, Conners' Rating Scales to determine whether K___ has ADHD, and an occupational therapy evaluation.

Following that meeting, DCPS conducted additional achievement assessments and Conners' Rating Scales for K___, but did not complete an occupational therapy evaluation. An MDT/IEP meeting convened on March 5, 2007 to develop an IEP for K___ based on the information that was available. The team agreed again that K___ suffers from an Emotional Disturbance, but the team determined that a learning disability still needed to be ruled out for K___ through an occupational therapy evaluation, a speech/language evaluation, and a hearing screening. The team developed an IEP that includes a full-time special education placement and two hours a week of therapeutic counseling services for K___. Despite the fact that there were still outstanding evaluations, the team developed K___'s IEP based on the information available because it was clear that K___ urgently requires an immediate full-time special education therapeutic placement due to the severity of his social-emotional needs and his significant academic struggles. The team agreed that K___'s IEP could be revised if necessary upon completion of the outstanding evaluations and that K___ was in immediate need of a fulltime placement.

One of the many reasons K___ urgently requires a new placement is because he is not safe at Walker Jones EC. For example, K___ was found by a neighbor in the middle of the school day off of school property at a neighborhood playground, where he was playing unattended with another young child. DCPS permitted K___, at only age six, to wander off of school grounds without any knowledge of his whereabouts. Even more alarming, K___ has returned home from school with a variety of injuries, including a gash on his head and a wound from being stabbed with a pencil, without explanation from school officials. Moreover, as aforementioned, K___ has engaged in self-injurious behavior such as hitting his head on a chair. K___ current placement at Walker Jones EC is inappropriate in part because it is a dangerous environment for him because the proper services and supports have not been put into place. Because it is unsafe for K___ to attend Walker Jones EC and it is clear that K___ requires supports and services not available at Walker Jones EC in order to be safe, Ms. Davis has had no choice but to keep K___ at home pending placement in an appropriate and safe school. Ms. Davis has requested that work be sent home or home instruction be provided for K___ in the interim until DCPS provides K___ with an appropriate school placement where he is not in danger.

Despite the urgent need for K___ to be in a new school placement, DCPS has failed to convene a placement meeting for K___. To date, almost a full month after the development of the IEP, K___'s IEP continues to go unimplemented, and K___ continues to go without the appropriate special education supports and services that he urgently requires. Due to DCPS's inaction, K___ remains placed at Walker Jones EC, an inappropriate placement where K___ cannot be kept safe and where he cannot make academic progress. Moreover, the process through which DCPS is making a placement for Keith is in violation of the IDEIA because DCPS has indicated that it is making a unilateral placement decision for K___, and Ms. Davis is therefore being precluded from the placement decision-making process.

To date, more than five months after K___ was referred for special education services, DCPS has failed to provide an appropriate placement for K___ and failed to conduct a speech/language evaluation, occupational therapy evaluation, and hearing screening for K___, despite the necessity for these evaluations. Due to DCPS' failures, K___ is functioning below grade level, and his mother is fearful to send him to school because he is a danger to himself and others. K___ is in dire need of a

school placement where he can begin to achieve academically and where he can go each day without fear for his safety.

2. To the extent known to you at this time, how can this problem be resolved?

First, DCPS must immediately place K⬤ at The Children's Guild or another appropriate non-public, full-time therapeutic special education school that can address all of K⬤ special needs. Second, DCPS must provide payment for a speech/language evaluation, an occupational therapy evaluation, and a hearing screening, if still outstanding, to be conducted by professionals of Ms. Davis' choice. Lastly, DCPS must provide K⬤ with compensatory education for the amount of time for which he was denied a free and appropriate public education.

3. Issues presented:

The central issue to be addressed is DCPS's failure to provide K⬤ with a free and appropriate public education ("FAPE"). The particular issues are specifically, but not limited to: (1) DCPS's failure to timely identify, locate, and/or evaluate K⬤ as a child in need of special education; (2) DCPS's failure to timely and/or fully evaluate K⬤ (3) DCPS's failure to provide K⬤ parent with notice of the procedural safeguards required under law following parental referrals; (4) DCPS's failure to issue any prior written notices of the refusal to initiate the identification, evaluation, educational placement, and/or the provision of a free and appropriate public education for K⬤ (5) DCPS's failure to develop and/or timely develop appropriate IEP(s) for K⬤ (6) DCPS' failure to implement K⬤ March 5, 2007 IEP and (7) DCPS's failure to timely provide and/or provide appropriate educational placement(s) for K⬤

## H.    Estimated amount of time needed for the hearing

Eight hours

## I.    Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)_____
- Special Communication (please describe the type)_____
- Special Accommodations for Disability (please be specific)_____
- Other_____

## J.    Waiver of Procedural Safeguards:

☐ I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

## K.    Requirement to Consider Compensatory Education:

If a hearing is held on a date that is past the date on which the Hearing Officer's Determination was required to be issued, Ms. Davis will invoke the rebuttable presumption of harm and compensatory education must be an issue considered by the Hearing Officer during the hearing.

## L.    Parent Signature and Affirmation:

I affirm that the information provided on this form is true and correct.

5

_Yail Zakai_       _4/3/07_
Signature of Parent or Guardian     Date

**M.**   <u>**Signature of Attorney/ Legal Representative:**</u>

_Yail Zakai_       _4/3/07_
Legal Representative / Advocate     Date

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

SEID DPCN Rev'd. 7/12/05

EXHIBIT

P-22

## STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | |
|---|---|
| **In the Matter of** | ) |
| | ) |
| K█ B█ | ) |
| Date of Birth █/00, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) |
| The District of Columbia Public Schools, | ) |
| Walker Jones EC, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MOTION FOR EXPEDITED HEARING

Pursuant to §1008 of the District of Columbia Public Schools' Student Hearing Office Standard Operating Procedures, Petitioner Sharena Davis, mother and next friend of minor child, K█ B█, through counsel respectfully moves this Hearing Officer for an expedited hearing. DCPS has failed to provide K█ with a safe and appropriate school placement where his IEP can be implemented. Specifically, because DCPS has failed to provide K█ with adequate supervision, the special education services and supports he requires, and an appropriate therapeutic placement, DCPS has jeopardized K█ safety and deprived him of any education whatsoever.

This Motion is based upon the attached memorandum of points and authorities and the record herein.

WHEREFORE, Petitioner requests that the Hearing Officer:

1. Grant Petitioner's Motion for an Expedited Due Process Hearing to resolve the Due Process Complaint filed by Petitioner on April 3, 2007.

2. Provide Petitioner with a due process hearing within twenty days following the hearing request.

3. Provide Petitioner with a determination within ten days after the hearing.

Respectfully Submitted,

Yael Zakai
DC Bar No. 482389
The Children's Law Center
901 15th St., NW, Suite 500
Washington, D.C. 20005
202-467-4900, ext. 513 (phone)
202-467-4949 (fax)

Counsel for Sharena Davis

STATE EDUCATION AGENCY
DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | |
|---|---|
| **In the Matter of** | ) |
| | ) |
| K⬛ B⬛ | ) |
| Date of Birth ⬛/00, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) |
| The District of Columbia Public Schools, | ) |
| Walker Jones EC, | ) |
| | ) |
| Respondent. | ) |

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXPEDITED HEARING

I.    **Summary of Argument**

Petitioner, Sharena Davis, mother and next of friend of K⬛ B⬛, hereby moves this Hearing Officer for an expedited hearing pursuant to §1008 of the DCPS Student Hearing Office Standard Operating Procedures.

K⬛ is a six year old student with a serious emotional disturbance. Because DCPS has not provided K⬛ with appropriate special education supports and services in a therapeutic school placement, K⬛ is a danger to himself and others at his current placement. Despite attempts by Ms. Davis to schedule an MDT placement meeting, DCPS has failed to convene a placement meeting or provide K⬛ with a placement. Therefore, K⬛s IEP has been wholly unimplemented for one month, and he continues to suffer irreparable harm. K⬛immediately requires an appropriate school placement where his safety will not be compromised and where he can have an opportunity to learn. As such, an expedited hearing is necessary to provide resolution to this urgent situation.

II.    **Facts and Procedural History**

1

K⬛ is a first grade student at Walker Jones Educational Center. Over the course of this school year, K⬛ safety and welfare have been repeatedly placed in jeopardy. On or about November 1, 2006, K⬛, at the age of only six years old, was found by a neighbor in the middle of the school day off of school property at a neighborhood playground, along with another young child, without any adult supervision. The school permitted K⬛ to wander off of school grounds without any knowledge of K⬛ whereabouts at the time, and clearly failed to provide supervision for this small child with social-emotional impairments. Second, K⬛ has returned home over the course of this school year with a variety of injuries, including a gash on his head and a wound from being stabbed with a pencil, without any explanation from K⬛ school. Third, K⬛ engages in self-injurious behavior at the school, such as hitting his head on the chair. Despite this alarming behavior and the tragic consequences that K⬛ could have potentially faced on several occasions this school year, DCPS is not providing K⬛ with the therapeutic environment he requires. Ms. Davis is extremely fearful for her son's safety each school day.

Furthermore, K⬛ is struggling tremendously with his academics, and has not been achieving on grade level in any of his academic subjects this year. In part due to DCPS' failures to address K⬛ impaired social-emotional functioning, K⬛ is not available for learning and cannot access his education. DCPS has also failed to address K⬛ continuing academic deficits. K⬛ has struggled for several years with writing, and now simply does not complete written work, often refusing even to complete simple copying exercises that require him to write. Moreover, although ⬛ is nearing the end of first grade, the age at which children should at least have developed basic reading skills, K⬛ cannot and does not read. K⬛ also performs below grade level in math. Learning is simply impossible for K⬛ in the academic environment at Walker Jones EC; in order to be able to access his education, K⬛ requires a therapeutic environment with special education supports and services not available to him at Walker Jones EC.

Due in part to the serious concerns about K⬛ safety, his social-emotional struggles, and his achieving below grade level, an MDT/IEP team convened on December 20, 2006 and determined that K⬛ requires a full-time therapeutic special education placement. (See attached Multidisciplinary Team Eligibility Meeting Notes,

2

December 20, 2006 (inaccurately dated December 13, 2006), page 2). However, because DCPS had not fully and timely evaluated K——, an IEP was not developed for him at that time. On March 5, 2007, an MDT/IEP team finally developed an IEP for K——, requiring a full-time therapeutic special education school placement. It was agreed by the team that Walker Jones EC is not a full-time therapeutic special education school placement, and that the school cannot implement K—— IEP. Due to the serious concerns regarding K—— at Walker Jones EC, the team specifically stated in the IEP notes that K—— urgently requires immediate placement. (See attached Individualized Education Program and Multidisciplinary Team Notes, March 5, 2007). However, DCPS has failed to provide K—— with an appropriate placement and failed to even convene a placement meeting for K——.

More than three months have passed since the MDT/IEP team first determined that K—— requires a full-time special education placement. Moreover, one full month has passed since an IEP was developed for K——, but DCPS has failed to implement the IEP. Because it is unsafe for K—— to attend Walker Jones EC and it is clear that K—— requires supports and services not available at Walker Jones EC in order to be safe, Ms. Davis has had no choice but to keep K—— at home as she awaits a safe, appropriate placement for K——. Ms. Davis has requested that work be sent home or home instruction be provided for K—— in the interim until DCPS provides K—— with an appropriate school placement where he is not in danger. Because the only school placement available to K—— is both unsafe and inappropriate and K—— is therefore unable to attend school at this time, it is urgent that K—— is provided with speedy resolution to his situation.

III.    **Argument**

The DCPS Student Hearing Office Standard Operating Procedures ("SOP") provides for expedited hearings. (SOP §1008) The SOP specifically provides for expedited hearings to be held within 20 days of filing, with the first 10 days set aside for DCPS to hold a resolution session. The SOP also provides that a decision will be reached within 10 days after the hearing concludes.

3

Under a regular hearing schedule where a decision is reached 75 days after a due process complaint is filed, K⬛may be left without an appropriate placement and without implementation of his IEP until June 17, 2007, which is several days after the end of the school year. Under the regular hearing schedule, K⬛ will be left in a dangerous and inappropriate school placement without receiving any education for the entire remainder of this school year.

Although expedited hearings are required when the matter involves discipline or suspension, expedited hearings have also been used for other issues requiring an expedited timeframe. For example, an expedited due process hearing was provided in a case where the parent disputed a placement and DCPS' failure to provide home instruction. See _R.G. v. District of Columbia, 2004 U.S. Dist. LEXIS 29042 (D.D.C. 2004)._ A Pennsylvania hearing officer granted an expedited hearing timeline when a parent was contesting a school district's determination that a child had no further need for ESY due to his improvement in school. See _William D. v. Manheim Twp. Sch. Dist., 2005 U.S. Dist. LEXIS 21437 (D. Pa. 2005)._ In another case, an expedited hearing was granted based simply on the allegation in a complaint of an inappropriate IEP. See _Lauren W. v. Bd. of Educ., 2002 U.S. Dist. LEXIS 18303 (D. Pa. 2002)._ Nothing in the SOP or in special education law precludes the use of an expedited hearing schedule outside of disciplinary issues, and there are cases where an expedited hearing is necessary due to the urgency of the situation.

Waiting 75 days from the date of filing for a determination on placement would provide inadequate protection for K⬛ safety and for K⬛ rights, and would cause him to suffer irreparable harm. The failure to provide FAPE constitutes irreparable injury, and each day a child is denied a free appropriate education by such procedural dereliction of a school system he or she is harmed yet again. _Blackman v. D.C., 277 F.Supp 2d 71, 79 (D.D.C. 2003); see also Cox v. Brown, 498 F.Supp 823, 829 (D.D.C. 1980)_ (finding in a case involving a preliminary injunction that the irreparable harm requirement satisfied by the failure to provide an appropriate education). It is clear that K⬛ is not being provided a FAPE because his IEP is simply not being implemented. Moreover, because of the grave danger to K⬛ safety, his mother is even too fearful to

4

send him to school. As such, DCPS is depriving K████ of any education whatsoever, causing him further irreparable harm.

Ms. Davis is likely to win on the merits of the case due to DCPS's denial of FAPE, and current failures to implement K████ IEP, convene a placement meeting, and provide an appropriate placement for K████. Therefore, without a speedy resolution through a due process hearing, Ms. Davis may be forced to seek a preliminary injunction to protect Keith's rights under the IDEIA.

Consequently, the expedited timeframe is necessary here to ensure that K████ receives a free and appropriate public education ("FAPE") where his safety won't be jeopardized and where he can have access to the education he is currently being denied.

## IV.    Conclusion

It is undisputed that K████ is currently in an inappropriate placement where his IEP cannot be implemented. More importantly, it is undisputed that in his current placement, K████ is unsafe. It is also undisputed by DCPS that K████ urgently and immediately requires a new placement. Nonetheless, DCPS has failed to provide Keith with a placement where his IEP can be implemented and where he will no longer be in danger. K████ requires an expedited hearing before a tragic situation results from K████s self-injurious behaviors, altercations with other students, or the inability of his current school to adequately supervise him and keep track of his whereabouts. Moreover, K████ requires an expedited hearing so that he does not lose one more day of learning. An expedited hearing timeline is necessary to prevent any further danger and to ensure that an education is provided for this six year old boy with very special needs.

Respectfully Submitted,

_Yael Zakai_

Yael Zakai
DC Bar No.482389
The Children's Law Center
901 15th St., NW, Suite 500
Washington, D.C.  20005

5

202-467-4900, ext. 513 (phone)
202-467-4949 (fax)

Counsel for Sharena Davis

## Certificate of Service

I hereby certify that on April 4, 2007, a copy of the foregoing Motion for Expedited Hearing and the accompanying Memorandum have been via facsimile to the following:

David Smith, Chief Hearing Officer
Student Hearing Office, DCPS
825 North Capital St., N.E.
8th Floor
Washington, D.C.  20002

Sheila Hall
Director
Student Hearing Office, DCPS
825 North Capital St., N.E.
8th Floor
Washington, D.C.  20002

Office of General Counsel, DCPS
825 North Capital St., N.E.
9th Floor
Washington, D.C.  20002

Yael Zakai

EXHIBIT

P-23

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## STATE ENFORCEMENT & INVESTIGATONS DIVISION

David R. Smith, Due Process Hearing Officer
825 North Capitol Street, 8th Floor, N.E.
Washington, DC 20002
(202) 442-5432 (phone); (202) 442-5556(fax)

<table>
<tr><td>In the Matter of:</td><td>)</td><td><strong>IMPARTIAL DUE PROCESS</strong></td></tr>
<tr><td></td><td>)</td><td><strong>HEARING OFFICER'S DECISION</strong></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>K█ B████ ("Student")</td><td>)</td><td></td></tr>
<tr><td>Date of Birth: ███████, 2000</td><td>)</td><td></td></tr>
<tr><td>Petitioner,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>District of Columbia Public Schools</td><td>)</td><td></td></tr>
<tr><td>("DCPS")</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Respondent</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

## PETITIONER'S MOTION FOR AN EXPEDITED HEARING

Counsel for the Petitioner:

Yael Zakai, Esq.
901 15th Street, N.W.
Suite 500
Washington, D.C. 20005

Counsel for DCPS:

Office of General Counsel
District of Columbia Public Schools,
9th Floor
825 North Capitol Street, NW
Washington, DC 20002

**SUMMARY:**

Petitioner filed a Due Process Complaint Notice on April 3, 2007 and subsequently filed a Motion for Expedited Hearing on April 4, 2007. In summary, the Motion contends that "DCPS failed to provide (the student) with a safe and appropriate school placement where his IEP can be implemented." However, neither the Complaint nor the Motion state facts as required by 20 U.S.C. §1415 (k)(4)(B), sufficient to warrant an expedited hearing.

1

**CONCLUSIONS OF LAW:**

Based on the Motion before this Hearing Officer, Petitioner's request for an expedited hearing does not satisfy the requirements for convening an Expedited Due Process Hearing in accordance with 20 U.S.C. §1415 (k)(4)(B) or Paragraph 1008 of the Student Hearing Office Operating Procedures.

**ORDER:**

Petitioner's request that the Hearing proceed as an expedited due process hearing is **DENIED.**

4-11-07
_____
Date

Issue Date: 4/12/07

_____
David R. Smith, Esq.
Impartial Special Education Hearing Officer

2

EXHIBIT
P-24

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Yael Zakai, Esq.**
**Parent: Shaona Davis**

Telephone Number: **(202) 467-4900**          Pages: **3**
Fax Number: **(202) 467-4949**                Date: **April 3, 2007**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: K▆▆ B▆▆
School: **Walker Jones ES**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

                                                  **Thank You**
                                                  **Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that is legally
privileged.  The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

# STATE EDUCATION AGENCY
# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| B⬤⬤, K. | Petitioner ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| PUBLIC | ) | |
| Walker-Jones ES | | |
| | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.    A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint within 15 calendar days of receiving notice of the parents' complaint. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings.**

2.    The complaint notice was filed on **April 3, 2007**

3.    The deadline for the resolution meeting is   **April 18, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.    ***Prior Written Notice Not Issued by the Local Educational Agency.***    If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include:

1.    An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
2.    A description of other options that the IEP Team considered and the reasons why those options were rejected;
3.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

4.     A description of the factors that is relevant to the agency's proposal or refusal.

B.     Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **April 13, 2007**.

C.     ***Deficiency Notice***.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.     The deadline for filing a deficiency notice is **April 18, 2007**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.



February 27, 2007

Yael Zakai, Staff Attorney
The Children's Law Center
901-15th Street, NW  Suite 500
Washington, DC  20005

*Sent via facsimile to 202.467.4949*

ADMINISTRATIVE OFFICE
6802 McClean Blvd
Baltimore, MD 21234-7260
Tel: 410-444-3800
Fax: 410-426-0612
www.childrensguild.org

SERVING CHILDREN IN
Anne Arundel County
Baltimore City
Prince George's County

BOARD OF TRUSTEES
Dennis Adams
Board Chair

Suzanne Pearce
Vice-Chair

Michael M. Gajewski, Jr.
Treasurer

Marie L. Noplock
Secretary

Brenda Dandy
Past Board Chair

Andrew L. Ross, Ph.D., LCSW-C
President

Judith Bender
Jane M. Brewer
Michael Diliberto
Diane M. Eaton
Mindy Geppi
Janie Greenwood Harris
Stephen L. Hecht
Bonnie K. Heneson
Pamela A. Kendall
Wingrove S. Lynton
John A. Murkey
James R. Novick
William Purnell
Paula Schaedlich
H. Robert Stephan
Michael Wolka
Neil R. G. Young

RE:     K█ B█
DOB:   █.00

Dear Ms. Zakai:

Thank you for the referral on student K█ B█ to be considered for placement at The Children's Guild in Chillum.  I am pleased to announce that we would like to offer acceptance and placement to this student into our Day School Program starting in the 2006-2007 academic school year pending review of his completed Individualized Education Program (IEP).

Once approved, this letter will serve as documentation that the District of Columbia Public Schools will be financially responsible for this student.  The original of this letter will be forwarded to you via the US Postal Service.  If you should have any questions or require additional information, please feel free to call me at 301.853.7370.

Sincerely,

*LaMar Williams*

LaMar Williams
Director of Admissions

Accredited by
The National Commission for the
Accreditation of Special Education
Services and Recognized as
Accreditation for Children with
Autism Services

Licensed
Maryland State Department of
Education

## DECLARATION OF LAMAR WILLIAMS IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LaMar Williams declares and says as follows:

1. I am the Director of Admissions at The Children's Guild.

2. I know and am familiar with K.B.

3. I met K.B. and his mother, Sharena Davis, at The Children's Guild on February 6, 2007.

4. At that time, I interviewed K.B. and Ms. Davis for possible placement of K.B. at The Children's Guild and provided them with a tour of The Children's Guild.

5. I have reviewed a variety of documentation regarding K.B., including K.B.'s November 20, 2006 psycho-educational evaluation, December 20, 2006 MDT/IEP meeting notes, February 5, 2007 educational evaluation, March 2, 2007 psychological evaluation, and March 5, 2007 IEP and MDT/IEP meeting notes.

6. A pre-admissions team, including myself, the principal, the school psychiatrist, and the director of clinical services met and determined that K.B. was accepted to The Children's Guild.

7. The Children's Guild issued a notice of acceptance for K.B. on February 27, 2007.

8. The Children's Guild aims to provide unique special education programs, stimulating environments, and integrated approaches to educating children with emotional and behavioral challenges.

9. The Children's Guild provides a full-time special education program for children who have emotional, behavioral, and learning problems.

10. The Children's Guild serves children who have a primary classification of emotional disturbance, multiple disabilities, or in a separate program, autism.

11. The Children's Guild also serves children who have secondary disabilities, such as learning disabilities, Attention Deficit Hyperactivity Disorder, other health impairments, and speech and language impairments.

12. The Children's Guild serves children ages four through fifteen years old.

13. If K.B. attends the Children's Guild, he will be grouped in a classroom with peers his age. Within his classroom, he will be placed in a reading group with children on his reading level.

14. K.B.'s classroom will be taught by two special education certified teachers.

15. K.B.'s therapist will be stationed in the classroom to address K.B.'s socio-emotional and behavioral needs in the classroom.

16. K.B.'s therapist will be an integral part of the teaching team and work closely with K.B. both in the classroom and in his individual and group therapy.

17. K.B.'s therapy will be integrated into the classroom instruction and the curriculum.

18. K.B.'s therapist will work with him to achieve his individualized goals in the classroom setting, and work with the teachers to ensure that his therapeutic and academic needs are being addressed.

19. The therapists and teachers will meet each day after school to discuss the issues that arise for K.B. throughout the course of the day, and to ensure that as a team, they are appropriately addressing K.B.'s needs.

20. K.B.'s therapist will be available whenever needed throughout the school day, including in a time of crisis.

21. The presence and involvement of K.B.'s therapist in the classroom will help to prevent and curb K.B.'s self-injurious behaviors.

22. All staff are trained in crisis de-escalation.

23. The Children's Guild has a multi-sensory de-escalation room where K.B. can go to re-group if needed.

24. The multi-sensory de-escalation room is supervised by our therapeutic staff and is designed to include energy outlets that involve sensory integration.

25. The Children's Guild also has a psychiatrist on staff and offers psychiatric services and medication management if needed.

26. The Children's Guild has a school wide behavioral program called Positive Behavior Intervention System (PBIS).

27. PBIS provides students with positive reinforcement and a token economy to promote positive behaviors.

28. The Children's Guild has a literacy team comprised of trained reading teachers to facilitate reading programs.

29. The Children's Guild offers extensive multi-sensory instruction, which K.B. will be able to receive.

30. Each child has an individual computer and each classroom has a Smart Board, which allows the teacher to incorporate the computers into academic lessons for the whole class.

31. With a computer integrated into his curriculum, K.B. will be able to develop keyboarding and word processing skills.

32. The Children's Guild can meet K.B.'s needs as a child with an emotional disturbance.

33. The Children's Guild can provide K.B. with 30.5 hours of specialized instruction, as is provided for on his IEP.

34. The Children's Guild can provide K.B. with individual and group counseling onsite, as is provided for on his IEP.

35. The Children's Guild is able to fully implement K.B.'s IEP.

36. If it is determined by an MDT/IEP team that K.B. also suffers from learning disabilities, The Children's Guild can provide K.B. with any specialized instruction, supports, or services he may require to address his learning disabilities.

37. The Children's Guild can provide K.B. with speech/language therapy if needed.

38. The Children's Guild can provide K.B. with occupational therapy if needed.

39. Based on my knowledge of K.B., K.B.'s IEP, and the evaluations that have been conducted for him, The Children's Guild is an appropriate placement for K.B.

40. K.B. is accepted to The Children's Guild for the current 2006-2007 school year, Extended School Year Services during the summer of 2007, and the 2007-2008 school year.

41. At this time, there are two available spots remaining at The Children's Guild for the 2006-2007 school year, and there are other families who have expressed interest in immediate placement at our school.

42. It is possible that K.B. may lose his spot at The Children's Guild for the 2006-2007 school year if he is not immediately placed at our school.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE
UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND
CORRECT.

Executed on  5.3.07

Lamar Williams


EXHIBIT
P-27

# NEURODEVELOPMENTAL PEDIATRIC PROGRAM

April 23, 2007

**RE:** B_____, K_____
**MR:** 020323075
**EN:** 0711300314
**DOB:** ____/2000
**DOV:** 04/23/2007

It was our pleasure to see patient, K___ B_____ in clinic today. He was accompanied by Yael Zakai, their family attorney. Ms. Zakai has reported that K___ has not been in school the last two weeks secondary to dangerous school situations. He was found wandering a nearby playground in the middle of the day and the school was unaware that he had actually left school grounds. Secondary to these developments, the patient has been receiving work packets at home and has not returned to school. He has recently passed a hearing test and is to have a speech and language evaluation tomorrow here at Children's National Medical Center. The patient does, in fact, have an IEP developed and needs assistance in acting the placement that was felt necessary to meet K___ needs at home and at school. Ms. Sharena Davis, K___ mother, was contacted to obtain more information on Keith's behaviors at home, but she was unable to provide this information at the time of the visit.

On exam, K___ was generally sitting quietly playing and coloring by himself. On physical exam of his head, he does have resolving tinea capitis. On his Woodcock Johnson scores, his math reasoning score was a 76, his reading application score an 84, and his academic score a 74. On his Wechsler Intelligence Scale for children, his verbal comprehension index score was 98, his perceptual reasoning index score a 94, his working memory index score an 83, his processing speed index 97 with full scale IQ listed at 91.

Our assessment is that K___ is a 7-year-old male with likely math and reading disability and probably also ADHD. Further information required to make this definitive diagnosis.

PLAN:
1. K___ requires emergency placement secondary to his emotional disturbances and the inability of the school to provide a safe environment for his education.
2. K___ will require a placement that is able to address his emotional needs as well as his academic needs. Currently, his emotional needs are greater and need the more immediate attention.
3. K___ will require extensive behavior management as a part of his treatment plan at school. This should include a behavior management plan for the the classroom and counseling onsite.

It was our pleasure to see K___ in our clinic today.

Sincerely,

DR. TINA HALLEY



NATHANIEL BEERS, M.D.

DH/MedQ
D:04/23/2007 11:58:58  T:04/23/2007 23:32:58  J: 298116

cc:  Dr. Rebecca Levorson
Pediatric Resident
Children's National Medical Center

Ms. Tael Zakai
Children's Law Center
202-467-4040

**Ms. Sharena Davis**
**9 Temple Court NW, Apt 9**
**Washington, DC 20001**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K.B., a minor,<br>By his parent and next friend,<br>SHERINA DAVIS<br>9 Temple Ct., NW<br>Washington, D.C. 20001<br><br>and<br><br>K.B.<br>9 Temple Ct., NW<br>Washington, D.C. 20001<br><br>       Plaintiffs,<br><br>       v.<br><br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation,<br>One Judiciary Square<br>441 4th St., N.W.<br>Washington, D.C.  20001,<br><br>and<br><br>CLIFFORD JANEY,<br>Superintendent,<br>District of Columbia Public Schools<br>825 North Capitol St., N.E.<br>Washington, D.C.  20002<br>(In his official capacity)<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER ENTERING PRELIMINARY INJUNCTION

On the____ day of May 2007, this Court considered Plaintiff's Motion for

Preliminary Injunction and determined that:

1.  This Court has subject matter jurisdiction over this case pursuant to the Court's

concurrent jurisdiction over cases arising under federal law and specifically,

under 20 U.S.C. § 1415(i)(2)(A) and personal matter jurisdiction over the Defendants.

2. Plaintiffs have established a likelihood of success on the merits of their complaint because Defendants are denying K.B. a free appropriate public education, in violation of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 *et seq.*, and because The Children's Guild is an appropriate placement for K.B.

3. Plaintiffs have established that K.B. suffers irreparable harm each day he is not enrolled at The Children's Guild.

4. Plaintiffs have established that any harm to Defendants in granting this Preliminary Injunction is outweighed by K.B.'s right to a free and appropriate education under the IDEIA.

5. Plaintiffs have established that the public interest is served by enforcing K.B.'s rights under the IDEIA.

Accordingly, it is, this _____ day of May 2007,

ORDERED that Plaintiff's Motion for Preliminary Injunction is hereby GRANTED; and it is

FURTHER ORDERED that Defendants shall immediately place and fund K.B. at The Children's Guild in Chillum, Maryland with all necessary special education and related services.

_____
Judge

Copies to:

Yael Zakai
Laura Rinaldi
The Children's Law Center
616 H St., NW, Suite 300
Washington, D.C. 20001

Linda Singer
Office of the Attorney General
441 4th Street, NW, 6th Floor
Washington, D.C. 20001

Abbey Hairston
Office of the General Counsel
District of Columbia Public Schools
825 North Capitol Street, N.E., 9th Floor
Washington D.C. 20002.